# Pearsall *v.* Hyde.

*Bill for Accounting, and to Redeem from Mortgage.*

(Decided November 7, 1914. 66 South. 665.)

1. *Mortgage; Deed as; Bill to Redeem.*—The bill considered and it is held not strictly a bill to have a deed absolute on its face declared a mortgage, within the rule that such relief cannot be accorded unless both parties intended that it should operate as a mortgage, but that the bill should be construed as showing the relation of mortgagor and mortgagee, and as one to enforce complainant's right to redeem.

2. *Same; Evidence; Redemption.*—The evidence examined and held to entitle complainant to redeem from the mortgage lien on his land upon payment by him of his indebtedness to the respondent with interest at the legal rate.

APPEAL from Colbert Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by Jerry Pearsall against John F. Hyde for an accounting and to redeem land from the mortgage lien. Decree for respondent and complainant appeals. Reversed, rendered and remanded.

KIRK, CARMICHAEL & RATHER, for appellant.

GEORGE P. JONES, and JACKSON & DELONEY, for appellee.

GARDNER, J.—The bill in this case was filed by the appellant against the appellee, and shows that in 1903 the appellant became indebted to the appellee in the sum of about $300 and secured the same by a mortgage upon the lands in controversy. Payments were made from time to time, and credited upon said mortgage. We will hereafter refer to the parties as complainant and respondent.

The complainant was also indebted to one Perry, the amount being secured by a mortgage upon two mules; and, default having been made upon said mortgage, said Perry took the mules. The complainant was left without any stock to work on his farm, and with no meat or corn or other supplies. He applied to the respondent, the one who held the mortgage on his land, for assistance. The respondent agreed to buy back from Perry one of the mules, and to furnish enough corn and meat for complainant to make his crop, and demanded security on the land. Respondent had prepared a deed to the land to himself, and at the time of its execution it was complainant's understanding that he was merely giving a lien on the land as security, and he only recently learned that respondent claimed to hold a deed to the land. The mule and some meat and corn were furnished complainant by respondent. The deed, a copy of which is made Exhibit 2 to the bill, dated January 16, 1911, recites a consideration of $515; but the complainant received only the one mule, about 20 bushels of corn, and a small amount of meat, and the above recital of consideration was untrue. Such are the allegations of the bill.

It is further alleged that the land was worth $1,800 or $2,000 and that $515 would be not more than one-fourth of its value; that the complainant is a colored man, about 60 years of age, ignorant, and cannot read or write, and knows nothing of any business transaction, and that, due to mental and physical infirmities, he has never been able to do more than make a living for himself and family on land given him by his father and mother; that he had confidence in respondent, and trusted him to treat him right, and that in the execution of the deed complainant was overreached and

taken advantage of, and that it was never his intention to sell his land. There are some other averments as to usury, etc., not necessary to be noticed. The prayer of the bill is for an accounting and redemption of the mortgage indebtedness of 1903, and that the deed of January 16, 1911, be held and considered only as a mortgage to secure the amount then advanced; and complainant offers to pay whatever amount is due on said mortgage, and also on said deed of January 16, 1911, and prays that he be permitted to redeem the property. There is also the general prayer for relief.

The sufficiency of the bill was not tested by demurrer. The answer denies the valuation of the land as stated, and denies that complainant was overreached, and insists that the complainant deeded to respondent the land with full knowledge of what he was doing, and that the consideration therefor was satisfaction of mortgage indebtedness and agreement on his part to advance complainant a mule and some supplies to make a crop that year, and that the consideration named, of $515, was an estimate of what the two sums would aggregate.

The case is argued by counsel for appellee—and was so treated by the learned chancellor, as shown in his opinion—as governed by the rules which are applied where a bill seeks to have a deed declared to be a mortgage, and which require that the proof must be clear and convincing (*Reeves v. Abercrombie,* 108 Ala. 535, 19 South. 41), and that in such cases it must appear that both parties intended the deed to so operate as a mortgage (*Douglass v. Moody,* 80 Ala. 61). The chancellor dismissed the bill, but without prejudice to the prosecution of another suit concerning the same subject-matter.

[Pearsall v. Hyde.]

We do not so construe the bill as did the court below, and as insisted by counsel for appellee, and therefore do not think the rules referred to in the above authorities have application here. The bill shows the relationship of mortgagor and mortgagee, the ignorance, and indeed mental infirmity, of the mortgagor, his necessitous condition, and his confidence in the mortgagee; that the mortgagee took advantage of him and secured a deed, when he, the mortgagor, thought he was giving only a lien or mortgage, and obtained land worth near $2,000 for the recited consideration of $515. The bill is one for the exercise of the equity of redemption, and to that end seeks to have the deed declared a mortgage for security of the sum advanced at that time. The rules of law governing such cases have been many times stated in our decisions. A few approprite quotations will suffice.

"The right of a mortgagor to redeem his property before foreclosure is jealously guarded in equity, so that agreements for its extinguishment, as by a sale from the mortgagor to the mortgagee, will be closely scrutinized by the court, and, if found to have been induced by unfair or oppressive use of the advantage which is presumed to be held by the mortgagee, such an agreement will be set aside and redemption allowed."—*Oakley v. Shelley*, 129 Ala. 467, 29 South. 387.

"A court of chancery will set aside any agreement entered into by a mortgagor, contemporaneously with the execution of the mortgage, by which he waives, unduly fetters, or agrees not to exercise his equity of redemption in event of default in the payment of the mortgage debt. And, as observed by Lord Chancellor Northington, in *Vernon v. Bethel*, 2 Eden, 110, 'there is great reason and justice in this rule, for necessitous

men are not, truly speaking, free men, but to answer a present exigency will submit to any terms that the crafty may impose upon them.' * * * But the reason of this rule, however, does not apply to any fair and bona fide purchase of the right of redemption which is entered into subsequently to the execution of the mortgage. Although courts of equity will scan such a purchase with watchfulness, it will still be upheld, unless procured by fraud, actual or constructive, including any unconscientious advantage, or undue influence, or on a consideration which is grossly inadequate."—*Stoutz v. Rouse,* 84 Ala. 309, 4 South. 170.

In *Goree v. Clements,* 94 Ala. 337, 10 South. 906, it is said: "The expression, sometimes used, that the release must be for an adequate consideration, is thus defined by Field, J., in *Peugh v. Davis,* 96 U. S. 332 [24 L. Ed. 775]: 'That is to say, it must be for a consideration which would be deemed reasonable if the transaction were between other parties dealing in similar property in its vicinity. Any marked undervaluation of the property in the price paid will vitiate the proceedings.' It may be conceded that, though there is the absence of actual fraud and undue advantage, gross inadequacy of consideration—'marked undervaluation of the property'—will of itself, avoid an absolute and unconditional release. Also, if the circumstances are merely suspicious, casting a shadow over the fairness of the acquisition of the equity of redemption, but not rising to the dignity of proof, a consideration so unreasonable that a party, not unduly influenced, free to act according to his own volition and judgment, would not surrender the property for the price paid, may suffice to vitiate the release."

The Supreme Court of Ohio has stated the rules governing such transactions in these few words:

[Pearsall v. Hyde.]

"Courts will scrutinize such a transaction, and will
not allow the mortgagee to take any undue advantage.
He will not be allowed to use his position as a cred-
itor to oppress, or to drive an unconscionable bargain.
But where such a sale is a fair one, under all the
circumstances, it will be sustained."—*Shaw v. Wal-
bridge,* 33 Ohio St. 1.

The following authorities have also been reviewed,
and we here cite them in this connection: *Noble v. Gra-
ham,* 140 Ala. 413, 37 South. 230; *Parmer v. Parmer,*
74 Ala. 285; *Peagler v. Stabler,* 91 Ala. 308, 9 South.
157; *Goodman's Ex'rs v. Pledger's Adm'r,* 14 Ala. 114;
1 Jones on Mortgages (6th Ed.) § 711; *Bradbury v.
Davenport,* 114 Cal. 593, 46 Pac. 1062, 55 Am. St. Rep.
92, and note; 27 Cyc. p. 1373; 11 Amer. & Eng. Ency.
Law, p. 146.

Although expressed in varying language, the prin-
ciple found in the books is the same, to the effect that
a court of equity scrutinizes closely and with jealous
care a transaction between mortgagor and mortgagee
whereby the mortgagee acquires from the mortgagor his
equity of redemption, and will not permit a mortgagee
to use his position of superiority to oppress the debtor,
or drive an unconscionable bargain, or take any un-
due advantage. If it appears that such has been the
case, a court of equity will set aside the transfer and
permit a redemption. If there has been paid any con-
sideration other than the settlement of the mortgage
indebtedness, a court of equity, upon setting aside the
deed, may hold the deed to be a mortgage for security
of the sum or consideration so paid, or may require
its payment as condition precedent to redemption; but
in declaring such a deed to be a mortgage in such case
the court does so only for the protection of the grantee
and merely as a convenient and effective method of en-

forcing the equitable maxim, "He who seeks equity must do equity," and the principles involved in those cases where the bill is filed solely to declare a deed a mortgage as pursuant to the real intention of the parties has no application.

The facts of the instant case need be but briefly referred to. The value of the land conveyed is of much, although not of controlling, importance in the case. There is some contrariety of opinion upon this question, as is usual; but we are reasonably satisfied that this land was worth at time of execution of the deed at least $1,200 or $1,500, and consider an acceptance of the former sum as very conservative. This is well established by a preponderance of the evidence. It appears that the respondent from his figures, considered complainant indebted to him in less than $300, the amount being secured by mortgage on the land. It appears without dispute that the mortgagee, Perry, had taken from complainant his mules, and that he was without any stock with which to make a crop, and it seems, also without supplies for the year. There can be no question as to his necessitous condition and that it was known to the respondent. He applies to the respondent for aid, to buy back one of his mules for him and furnish him some meat and corn wherewith to make his crop. The beginning of the negotiation is told by the respondent in these words: "He came to me and told me that Mr. Perry had taken his mule, and he didn't have nothing to make a crop with, he says: 'Yes,' he says, 'the land is yours;' and I told him, 'Jere, you will sign me a deed to the land, I will buy you a mule and furnish you supplies to make a crop on,' and he said he would do it, * * * and then I got Mr. Jackson to write the deed, and of course he went before officers, and I read the deed to him and

explained it. I don't remember about explaining it to him at the time, but I read it to him."

The proof reasonably satisfies us that the complainant was of weak mind, ignorant, illiterate, and below the average negro in mentality. He testifies that he could not count money, and knew nothing of business transactions. The land had been given him and his brother had helped to look after him. He was doubtless near 60 years of age. The deed was executed in a more or less perfunctory manner. Complainant insists that he thought he was giving a lien on his land. Respondent insists that complainant *sold* it to him in satisfaction of his indebtedness and of supplies for the year. Respondent estimated the value of the mule and supplies, and, adding such estimated sum to his indebtedness, placed the consideration of the deed at $515. His estimate overreached the mork by something over $100, according to his own testimony. Respondent states that he agreed to buy the mule back for him, and was paid by the complainant therefor, by the deed. But we find him admitting that he paid Perry only $90 for the mule, and *charged* complainant therefor $130; and of all this complainant was entirely ignorant. In addition to the mule, he charged complainant with $10.80 worth of corn, $15.53 worth of meat, and 95 cents worth of flour, which together with the mule charged at $130 (for which he paid only $90), and recording fee, etc., aggregated $160.13. He brought an ejectment suit against complainant, and this bill was filed.

After the beginning of this litigation respondent discovered (and it seems this light broke upon his vision only after the litigation had begun) that, as he had not advanced complainant as much as his estimate, he was still due him about $100, and he went to the trou-

[Pearsall v. Hyde.]

ble of placing the sum in his pocket and carrying same about with him for some time, seeking an opportunity to pay it to complainant, and when at last tendered it was refused. At the time of the execution of the deed, respondent promised to buy complainant a mule and furnish some supplies. That was all. Nothing was said as to the price of the mule or the amount of supplies. Nothing was questioned by complainant. It appears that complainant had paid on the old indebtedness $20, which had not been credited by respondent, and which was afterwards admitted. The mule was bought for complainant, and if respondent's contention be true, and there was a sale, then in the purchase he was merely the agent of complainant, as it would have been complainant's money in fact. Therefore, deducting the $100 not furnished, and placing the price of the mule at $90, the sum paid, and crediting the $20 admitted, it appears that, as a matter of fact, by this transaction respondent acquired the legal title to land worth, according to the preponderance of the evidence, at least $1,200, and doubtless more, for about $355. As an explanation why he should buy the mule at $90 and charge it to complainant at $130, respondent testified that he was merely making the usual and customary profit; but it must be remembered that his contention was that there was an absolute sale of the land. He delivered up no mortgage, but he says he marked the record satisfied.

There are many matters to which we might refer, but of which we consider it unnecessary to treat. Indeed, the testimony of the respondent himself is not such as to inspire confidence in the theory that there was a bona fide sale of the land and extinguishment of the equity of redemption. The facts and circumstances of this case are such as to cast a shadow over

[Pearsall v. Hyde.]

the fairness of the acquisition of the equity of redemption, and the consideration was greatly disproportionate to the real value—a "marked undervaluation." Complainant was weak-minded, ignorant, and in necessitous condition. The respondent occupied a position of great superiority; and we are convinced that he used his position as mortgagee, and acquired an undue advantage over the complainant, which must meet the disapproval and condemnation of a court of conscience. It could no longer be the boast of a court of equity that "its crowning glory is to protect the weak and ignorant from imposition by the strong and intelligent," if, under the facts as disclosed by this record, a mortgagee occupying such vantage ground as did the respondent in this case, were permitted to enjoy the fruits of so unconscionable a bargain obtained from an ignorant, weak-minded, necessitous mortgagor. The mortgagee is not injured, for he is to receive what is justly due him, but no more.

Measured by the rules quoted from the above authorities, the transaction cannot stand, and indeed fairness and justice demand that it fall. We are not sufficiently convinced that agreement as to usury has been shown (*Nance v. Gray*, 143 Ala. 234, 38 South. 916, 5 Ann. Cas. 55), and hence, in the reference hereinafter ordered, the register will calculate interest at the legal rate.

The decree of the chancery court, dismissing the bill, is reversed, and a decree will be here entered, setting aside the conveyance of January 16, 1911, a copy of which is made Exhibit No. 2 to the bill, as a conveyance or deed, and declaring the same only a security for the sum actually advanced thereon by the respondent, with legal interest, and permitting a redemption by complainant of the mortgage, a copy of which is

made Exhibit No. 1 to the bill. To this end a rererence is ordered to be held by the register, at his early convenience, to state the account between the parties and ascertain the amount due on said mortgage indebtedness and on the transaction had under Exhibit No. 2 to the bill. Upon said reference the register will place the amount paid for the mule at $90, that being the sum paid by the respondent therefor, and he will calculate the indebtedness on the mortgage at the legal rate of interest according to rules of partial payment. The register will make his report to the next term of the chancery court of Colbert county following said reference. The cause will be remanded to said chancery court for such further proceedings therein as may be found necessary.

Reversed, rendered, and remanded.

McCLELLAN, SAYRE, and DE GRAFFENRIED, JJ., concur.