(79 South. 581)

PATTERSON v. HOLMES et al. (8 Div. 88.)

(Supreme Court of Alabama. June 6, 1918. Rehearing Denied June 29, 1918.)

1. MORTGAGES ⬤�net593 —. REDEMPTION — "PROPERTY."

The right of redemption from mortgage foreclosure as given by Code 1907, § 5746, is transferable either before or after foreclosure and gives a property right under definition of property as right to possess, use, enjoy, sell, and dispose of a thing. (Per Sayre and Thomas, JJ.)

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Property.]

2. MORTGAGES ⬤⟷616—ABSOLUTE CONVEYANCE—SECURITY—RIGHT TO REDEEM.

A bill, alleging that mortgagee purchasing at foreclosure sale obtained no deed and did not go into possession, but thereafter secured an absolute deed from mortgagor, the complainant, on parol agreement to give right of redemption and praying for recovery of land and cancellation of deed, held to be sustained as against de-

murrer for want of equity based on contention that statutory right of redemption was cut off by the agreement, and that agreement could not be varied by parol, on theory of declaring absolute conveyance security for right of redemption. (Per Sayre and Thomas, JJ.)

3. MORTGAGES ⊚⟶32(3)—ABSOLUTE CONVEYANCE—SECURITY—RIGHT OF REDEMPTION.

The right to have the deed declared security *held* not affected by the fact that redemption under Code 1907, § 5746, must have certain formalities, as relief is granted on contract and not statute. (Per Sayre and Thomas, JJ.)

4. MORTGAGES ⊚⟶616 — REDEMPTION — AGREEMENT AFFECTING RIGHT—CANCELLATION—PLEADING.

A bill, alleging that mortgagee purchasing at foreclosure sale obtained no deed and did not go into possession but thereafter secured an absolute deed from mortgagor, the complainant, on parol agreement to give right of redemption and praying for recovery of land and cancellation of deed, *held* to be sustained as against demurrer for want of equity on theory of bill to secure statutory right of redemption inequitably denied complainant with cancellation of deed as incidental relief. (Per Gardner, Mayfield, and Somerville, JJ.)

Anderson, C. J., and McClellan, J., dissenting.

Appeal from Circuit Court, Morgan County; R. C. Brickell, Judge.

Bill in equity by T. Z. Holmes and others against A. G. Patterson. From a decree overruling demurrer to bill, defendant appeals. Affirmed.

E. W. Godbey, of Decatur, for appellant. Sample & Kilpatrick, of Cullman, for appellees.

SAYRE, J. As the bill filed by appellees shows, appellant foreclosed his mortgage upon the land of appellees, and became the purchaser at the sale; no irregularity in the sale is averred, but no deed was executed to evidence the new right or title thus acquired, nor did appellant then go into possession. The averment of the amended bill is that appellant "never claimed any right in said land as such purchaser, and expressly denies any claim or right to said land for and on account of any foreclosure of said mortgage." Afterwards appellees made a deed to appellant without expressed condition or defeasance, after which, and according to agreement, appellant went into possession. By their bill in this cause appellees seek to redeem under and according to the terms of a concurrent parol agreement into which the parties entered; their understanding being, perhaps, that such deed and parol agreement served in lieu of a formal foreclosure.

The bill avers that:

"Soon after the alleged or attempted mortgage foreclosure sale," appellant "requested, urged, and insisted that complainants [appellees] execute to him a deed in proper form conveying to him said land, and suggested that such deed recite as a consideration the amount of the indebtedness on said mortgage, stating that no deed had been made under the foreclosure; that, in compliance with said request, the complainants executed said deed upon condition and with the agreement and understanding"—resting in parol, evidently—"between complainants and respondent [appellant] that, at any time within two years from the date of the execution of said deed, complainants could redeem said land from the respondent by paying to respondent the consideration stated, being the amount of the original debt together with 10 per cent. interest thereon."

It is further averred that the land is worth considerably more than the amount of the debt, and that:

"Said deed was executed upon the sole consideration of said debt together with the agreement with the grantee * * * that complainants' right to redeem said land would not be in any way affected by said deed, * * * and after repeated promises and assurances on the part of the respondent that complainants would be permitted to redeem said land, and after repeated promises upon the part of the respondent that, upon payment to him of the consideration stated in said deed with 10 per cent. interest thereon at any time within two years from the date of said deed, he would reconvey said land so as to vest the absolute title in and to said property back in the complainants."

The bill is not clear or consistent in all respects, it may be conceded—the demurrer takes no objection on this account—and, as appears from their briefs, the parties are not agreed as to the ground upon which it proceeds or the precise nature of the relief sought; but we construe it as above stated, that being perhaps the most fair and natural construction, and one, we take it, of which the appellant will not complain, since it gives point to the most vital objections urged in the brief against the bill, demurrer to which was overruled in the court below.

It may be noted further that a prayer for cancellation, which the bill contains, in connection with some of the circumstances under which it is alleged the deed was executed, might be construed as intimating in some sort fraud in its procurement; but the bill draws no conclusion of oppression, undue influence, or fraud of other character, and it would seem that it recognizes the validity of the instrument by offering to redeem under an agreement which is alleged to have constituted an essential part of the contract in virtue of which the deed was executed.

Appellant's argument is that the conventional deed extinguished the statutory right of redemption absolutely—a proposition that need not be denied as to the strict statutory right—and that the original foreclosure must be held valid, and that the statutory right of redemption thereafter existing as the only element that survived such foreclosure could not be made the subject of a mortgage, nor could it survive a deed absolute in form, with a defeasance merely oral; in short, appellant contends that there is no equity in the bill for the reason that the alleged agreement for redemption was not expressed in writing.

In Stoutz v. Rouse, 84 Ala. 309, 4 South. 170, this court held that mortgagor and mortgagee may by fair contract, without re-

sort to the courts, do what the law would do for them or what the law would compel one to do for the other. The court said of an agreement in that case similar to the agreement averred in this—evidenced, however, in that case by an instrument in writing—that it merely converted the equity of redemption into the statutory right of redemption, in order to save the expenses of foreclosure incident to a suit in chancery.

In Peagler v. Stabler, 91 Ala. 308, 9 South. 157, the court said:

"There is no reason why a mortgagor and mortgagee may not contract with each other that a sale and conveyance of the mortgaged property to the mortgagee shall stand for a mere formal foreclosure"—citing Stoutz v. Rouse, supra.

But the court added:

"And they may contract at the same time that the mortgagor may redeem or repurchase the property within two years, or within any reasonable specified time; but such agreement for the right to repurchase or redeem cannot rest in parol, or be established by parol evidence"— and this expression is cited by appellant as authority for his contention stated above.

It is conceded that the expression relied upon must be accepted as always correct if used in a court of law (Bragg v. Massey, 38 Ala. 89, 79 Am. Dec. 82); but it is well settled that:

"In a court of equity, the character of the conveyance must be determined by the clear and certain intention of the parties; and, if there be an agreement between them that it shall operate as a security for a debt, it can and will operate only as a mortgage. The agreement may be expressed in the deed, or in a separate writing, or it may rest in parol." Harrison v. Maury, 157 Ala. 227, 47 South. 724.

The expression relied upon was entirely correct in the case in which it was used, for the true ground of the decision, in accord with our cases generally (see cases cited in the notes to section 286 of 1 Jones on Mortg. [7th Ed.]), appeared in the further course of the opinion where it was said: "We agree with the chancellor that the evidence fails to show that the deed was intended to operate as a mortgage, or that it expresses any other than the true intention of the parties at the time of its execution"—viz. that it was a conveyance in satisfaction of the debts due from the mortgagors in that case, thus absolutely and beyond redemption destroying all rights growing out of the mortgage relation between the parties. I do not agree, therefore, that the statement made in the case of Peagler v. Stabler can be properly applied to the case at hand.

Counsel for appellant in his brief, very correctly, as I think, states the matter at issue as follows:

"Now, there can be a formal foreclosure, and there can be an informal foreclosure. A formal foreclosure cuts off the equity of redemption, leaving the statutory right of redemption. But a formal foreclosure may be dispensed with by agreement of parties, and an informal or conventional foreclosure be substituted. This conventional foreclosure must take the shape of a deed from the mortgagor to the mortgagee. If there has been no previous foreclosure, of a formal nature, this conventional foreclosure merely does that which would be done by the formal foreclosure—extinguishes the equity of redemption, leaving the statutory right of redemption just where it would have been left had there been a formal foreclosure. But"— and here is stated in a few words the whole force of appellant's argument on this point—"where there has been first a formal foreclosure, as there has been here, there is left, thereafter, no field for the operation of an absolute deed save only the extinguishment of that statutory right of redemption. When Patterson foreclosed, there was nothing but the bare right to redeem left; and that passed irrevocably by the deed. It was not property that could have been mortgaged."

Pursuing his argument, appellant cites Harris v. Miller, 71 Ala. 26 (a case arising out of a contest of a claim of exemption to a debt sought to be subjected by garnishment, and in which, for aught appearing, a deed was executed) to the effect that, where the mortgagee becomes the purchaser at his own sale, bidding the amount of his debt and expenses, the mortgage debt is by operation of law satisfied and extinguished—a proposition in no wise questioned, if the mortgagee gets what he bids for, i. e., all the original right and title of the mortgagor.

Further the appellant quotes from Mewburn v. Bass, 82 Ala. 622, 2 South. 520, this language, which in that case was quoted from Comer v. Sheehan, 74 Ala. 452:

"We are of opinion that one who purchases as mortgagee at his own sale comes within the benefit designed to be secured by this statute (Code 1876, § 2878, statutory redemption), although no deed, or other written memorandum of the sale, is made at the time, so as to rescue the transaction from the influence of the statute of frauds."

From the report of Comer v. Sheehan it appears that the court was speaking of section 2878 of the Code of 1876 (section 5747 of the present Code), providing that possession of the land must be delivered to the purchaser within ten days, etc. In Cooper v. Hornsby, 71 Ala. 62, the court said:

"It is true that no deeds were executed between the parties, but this was material only as affecting the legal title to the lands in question, which could be divested only by the execution and delivery of a conveyance in writing"—citing 2 Jones on Mortg. § 1894; Graham v. Newman, 21 Ala. 497.

And in Mewburn v. Bass, supra, the court further said:

"The case of Cooper v. Hornsby, 71 Ala. 62, decides that 'such a sale is valid, as against third parties, on collateral assailment; not being strictly void, but voidable merely by interposition of the statute [of frauds], which is considered as waived, unless specially pleaded by one having the right to set up the defense. The sale therefore is binding, so long as the parties do not object to its validity, as it would operate to cut off the equity of redemption of the mortgagor, and reduce it to a mere statutory right of redemption.'"

But in an action of ejectment, Hambrick v. New England Mortgage Security Co., 100 Ala. 551, 13 South. 778, also cited by appellant, the court said:

"We have before now held that so long as the foreclosure sale under a mortgage stands, and no affirmative legal steps are taken to avoid it, the purchaser, although he is the mortgagee, must be regarded as the owner of the land. Not being competent to make a conveyance to himself, his title may be only equitable, and, standing alone, might be insufficient to support ejectment; but, by virtue of his title as mortgagee, both the legal and equitable title become vested in him, and constitute a perfect title, subject only to the right of the mortgagor, seasonably expressed, in a court of equity, to be let in to redeem, and this he cannot do, without offering to do, and doing equity"—citing cases.

[1, 2] Whatever result might flow from the cases referred to, if held applicable to the case under consideration, it is quite clear that under the statute as it now is, section 5746 of the Code of 1907, the right of redemption is transferable, either before or after foreclosure, as a property right. The right of redemption, as now defined by statute, falls within the common definition of property as the right to possess, use, enjoy, and to sell or otherwise dispose of a thing according to the will of the owner, without diminution or control save only by the laws of the land. 32 Cyc. 677. At any rate, it is evident that appellees had a substantial, assignable, and descendible interest in the property, notwithstanding the foreclosure, and that appellant needed a deed to make even his foreclosure title perfect in form and in fact. If then appellant conceived it to his interest to waive what right he had acquired by the foreclosure, still resting in parol, and to bargain with appellees for a deed which would vest in him the form of a perfect title, agreeing nevertheless that it should operate as a security—of a peculiar sort, it may be admitted—no sufficient reason is perceived why the court should not give effect to the agreement according to the intention of the parties. The instrument purports to be an absolute conveyance, and was executed as planned; but if the relation of debtor and creditor still existed—and we so construe the bill—and both parties actually intended a transfer for security only, then it would seem, on a familiar principle of equity, that the grantor may treat the transaction as though its mortgage nature were expressed in terms. Such agreement merely substituted for one security another of different form, conferring additional benefits upon the appellant mortgagee, and is in principle no more obnoxious to the statute of frauds than any other which is saved from the statute by the spirit of the maxim, "Once a mortgage, always a mortgage." Even if, as argued, a deed conditioned by such agreement did not improve appellant's position—though this cannot be successfully maintained, for thereafter he was put into possession in order, it may be inferred, that he might enjoy rents and profits as owner—that consideration would not control the construction of the bill, but would be a matter of evidence, to be weighed in determining the issue of fact whether the instrument was intended to operate as a security, as alleged, or as a deed forever foreclosing the relation of debtor and creditor between the parties and substituting another, entirely new, such was the use made of a like consideration in the case of Adams v. Pilcher, 92 Ala. 477, 8 South. 757, cited by appellant. Nor does it answer the case averred by appellees to say, as appellant does in effect, that a bill by appellant to foreclose under the agreement could not be maintained, and therefore that no security could have been intended—we would prefer to say such a bill could hardly serve any useful purpose—for appellees have by contract placed appellant in a position of advantage in which he could never need to foreclose. The burden of any action, necessity for which might arise out of the new relation between the parties, was left to rest entirely and exclusively upon appellees, and that action must be taken within a limited time.

[3] It is further urged against the bill that appellees are seeking to avail themselves of the provisions of the statute of redemptions without complying with the prime condition imposed by the statute, which, as appellant states it, requires payment of the redemption money into court, or such part thereof as the redemptioner knows or can ascertain to be due. Pretermitting possible objections to this statement, for that it harks back to old decisions and ignores the provisions of section 5748, new to the Code of 1907, as amended by the act of 1911 (p. 391), and putting aside, as immaterial and superfluous, those averments of the bill which indicate an apprehension on the part of appellees that they needed to proceed as in a case of statutory redemption, and by which appellees have sought to avail themselves of the benefit of that section, appellees' bill is not a bill to redeem under the statute, but it is a bill to redeem under and according to the terms of a valid parol agreement, made, along with the deed, in substitution for a foreclosure; such agreement, and the redemption under it, being unaffected by the statute, though evidently entered into with the purpose of securing rights and imposing liabilities like unto those secured and imposed by the statute. Such being the case, appellees come into court, not with the burdens imposed upon statutory redemptioners, but more in the fashion of equitable redemptioners, in whose case it is not essential to the equity of their bill that it should allege a previous tender nor that any amount should be brought into court. McCalley v. Otey, 90 Ala. 302, 8 South. 157; Hammett v. White, 128 Ala. 380, 29 South. 547; Johnson v. Smith, 190 Ala. 521, 67 South. 401.

The Chief Justice bases his opinion that there is no equity in the bill upon the authority of Goree v. Clements, 94 Ala. 337, 10

South. 906, and Peagler v. Stabler, 91 Ala. 308, 9 South. 157. I have stated the reason why, in my judgment, Peagler v. Stabler is not an authority in the circumstances of this case. As for Goree v. Clements, it is indeed a very apt authority against the opinion of GARDNER, J., in which MAYFIELD and SOMERVILLE, JJ., have concurred. But it must be noted that the bill in that case proceeded upon the theory that a sale or release of the equity of redemption had been fraudulently, oppressively, or inequitably procured, and relief was denied on the ground that the proof sustained no such case. However, the court proceeded to state its consideration of the rights of the parties on defendant's theory of the character and purpose of the bill, and the majority of the court were of the opinion that the evidence of the complainant, who was the only witness testifying to the terms of the agreement, if accepted as true, showed a conditional sale. Accepting now that finding of the majority, I would have no difficulty in agreeing with the conclusion that the agreement to allow the right to repurchase, not being in writing, was void under the statute of frauds. But I do not so construe the averments of the bill in this case. My construction of the bill is that the debt, by agreement, survived the imperfect foreclosure, and that complainants' bill is a bill, not to repurchase, but to redeem. I do not, of course, know what the proof will develop; but, if it makes out a case in consonance with the bill as I construe it, I think complainants should have relief.

The conclusion reached by THOMAS, J., who concurs in the foregoing, and the writer, is that the objections taken by demurrer and urged in argument against the bill cannot be sustained, and that the decree of the circuit court, overruling the demurrer, should be affirmed, and the opinion of the majority of the court is that the decree should be affirmed, though the majority is not in agreement as to the grounds upon which the judgment should stand. The other Justices have expressed their own different views.

Affirmed.

GARDNER, J. (concurring in result). [4] My concurrence in the affirmance of the decree of the court below is rested upon a theory different from that treated in the foregoing opinion of Mr. Justice SAYRE, and may be very briefly stated as follows: The bill is construed as disclosing that the mortgage here involved was foreclosed (the mortgagee becoming the purchaser), but no deed was executed. The bill further shows that soon thereafter respondent urged the complainants to execute a deed to him, which they did after considerable insistence both by respondent and his brother-in-law who accompanied respondent to complainants' premises and took the acknowledgments

to the deed. There was no consideration for this deed; other than the debt, security for which the mortgage was executed. The deed was executed by the complainants upon the repeated assurance on the part of the respondent that upon payment of the consideration stated in the deed, with 10 per cent. interest thereon, at any time within two years from the date of the deed he (respondent) would reconvey said land, and "that complainants' right to redeem said land would not be in any way affected by said deed." It is also alleged that the land involved was of considerably more value than the amount of the debt. The bill prays for a cancellation of this deed, and that complainants be permitted to redeem the land upon the payment of the amount ascertained by the court to be due.

As an excuse for the failure on the part of the complainants to tender the amount due in court, the bill shows a demand in writing made upon respondent that they (complainants) be furnished with a statement of the debt and all lawful charges, in all respects as provided by section 5748 of the Code of 1907, and a refusal on his (respondent's) part to furnish the same. The bill was filed within the period of two years following the foreclosure of the mortgage.

Courts of equity scan with great watchfulness transactions of this character between the mortgagor and mortgagee, and the mortgagor's right of redemption is jealously guarded in equity, so that agreements for its extinguishment, as by a sale from the mortgagor to the mortgagee, are closely scrutinized, and, if found to have been induced by unfair or oppressive use of the advantage which is presumed to be held by the mortgagee, such an agreement will be set aside and redemption allowed. This principle was given effect in Pearsall v. Hyde, 189 Ala. 86, 66 South. 665, where the following quotation from the Supreme Court of Ohio was noted with approval:

"Courts will scrutinize such a transaction, and will not allow the mortgagee to take any undue advantage. He will not be allowed to use his position as a creditor to oppress, or to drive an unconscionable bargain. But where such a sale is a fair one, under all the circumstances, it will be sustained."

This principle was also applied in the still more recent case of Shaw v. Lacy, 74 South. 933,[1] where it was held that, in cases of this character, "the burden of proof is on the mortgagee to show that the transaction was fair and honest—free from the infection of fraud, oppression, or any form of undue influence." The opinion quotes with approval from Villa v. Rodriguez, 12 Wall. 323, 20 L. Ed. 406, from which I have taken the following excerpts as peculiarly applicable here. Speaking of the right of redemption, where the mortgagor has conveyed to the mortgagee the equity of redemption, the court said:

"It is characterized by a jealous and salutary policy. Principles almost as stern are applied

[1] 199 Ala. 450.

as those which govern where a sale by a cestui que trust to his trustee is drawn in question. To give validity to such a sale by a mortgagor, it must be shown that the conduct of the mortgagee was, in all things, fair and frank, and that he paid for the property what it was worth. He must hold out no delusive hopes; he must exercise no undue influence; he must take no advantage of the fears or poverty of the other party. Any indirection or obliquity of conduct is fatal to his title. Every doubt will be resolved against him."

The Pearsall Case, supra, also notes some of the authorities dealing with the question of "marked undervaluation" of the property in cases of that character, disclosing that some of the authorities have held that gross inadequacy of consideration alone will itself suffice to avoid an absolute conveyance by the mortgagor to the mortgagee.

It appears therefore that the principle of these cases does not rest upon such proof of fraud necessary to vitiate the instrument entirely as if in a court of law. The courts recognize that the mortgagee occupies a position of advantage, and the mortgagor usually occupies the position of one in a necessitous condition. And thus a court of equity scrutinizes such a transaction, and will allow no undue advantage to be taken of the mortgagor. The mortgagee will not be permitted to use his position to oppress, or to drive an unconscionable bargain, or to take any undue advantage. His conduct must be "fair and frank."

True, in the instant case, there is no averment that the mortgagee misrepresented the contents of the deed, or that the mortgagors did not understand that they were executing a deed; but the bill does show that the mortgagee pressed the complainants with the execution of this deed, and promised and assured them repeatedly that their right of redemption would remain unaffected thereby —all of which without any new consideration for its support. Without the execution of this deed the complainants had two years within which to redeem their property and to permit the mortgagee to hold this deed and thus cut off their right of redemption would be to permit him to obtain an undue advantage, and to drive an unconscionable bargain, based upon his false and deceptive promises and assurances—the "delusive hopes" mentioned in the above quotation from the Villa Case.

I am therefore of the opinion that the principle applied in Pearsall v. Hyde, supra, and Shaw v. Lacy, supra, together with the authorities there cited, sustain the equity of this bill for the exercise of the statutory right of redemption, and to set aside the deed in question as having been induced by unfair or oppressive use of the advantage which he held as mortgagee. I recognize the fact that the authorities in the Pearsall and Shaw Cases deal with the cutting off of the equity of redemption; but, under the averments of the bill, I can see no reason why the same principle should not be given application in the instant case, where it appears that soon after the foreclosure of the mortgage the deed was obtained upon such false promises and assurances so as to cut off from the mortgagors the statutory right of redemption.

I am of the opinion that the bill is not subject to any of the assignments of demurrer interposed, and that its equity may be rested upon the rights of complainants to exercise the statutory right of redemption, and, as an incident to their relief and to pave the way therefor, have said deed set aside and canceled. I therefore concur in the result.

MAYFIELD and SOMERVILLE, JJ., concur in the foregoing views.

ANDERSON, C. J. (dissenting). I think the bill was subject to the respondent's demurrer, and therefore dissent from the holding of the majority. The bill, as last amended, negatives a foreclosure under the terms of the mortgage and avers the execution of a deed in lieu of a foreclosure; therefore, I do not see how some of the members of the court can hold that the complainant has a statutory right of redemption. The bill avers an oral agreement at the time of the execution of the deed to permit the complainant to redeem the property. A mortgagor and mortgagee can no doubt obviate a foreclosure by a deed and the mortgagor can preserve his right to redeem, either under the terms of the deed, or by an independent writing; but such an agreement must not rest in parol, as it is within the statute of frauds. Goree v. Clements, 94 Ala. 337, 10 South. 906; Peagler v. Stabler, 91 Ala. 308, 9 South. 157. True, we have an equitable rule that, even in the absence of a written reservation of a right to redeem, if the deed is procured by fraud or oppression the court will upon timely application set the same aside to the extent of permitting the mortgagor to redeem the property; but the bill in the present case fails to make out such a case of fraud or oppression as would authorize a court of equity to annul the deed.

McCLELLAN, J. (dissenting). The appeal is from a decree overruling the appellant's demurrer to the bill. The court sustained grounds 35 and 36 of the demurrer to the bill as it stood before the last amendment, but overruled the demurrer to the bill as finally amended. There is no particular occasion to deal with the bill otherwise than on the case made after the last amendment. The first consideration is the construction of the bill as finally amended. According to the familiar rule, its averments must be construed most strongly against the pleader. 5 Michie, Dig. Ala. Rep. p. 546. Reading the bill, as last amended, in the light and under the influence of the stated rule of construction, the case made is simply this: The mortgagee (appellant-respondent) foreclosed the

mortgage under the power of sale, and, being the highest bidder thereat, became the purchaser of the land described in the mortgage and, now, also described in the bill; and subsequent to the foreclosure the erstwhile mortgagors executed to the erstwhile mortgagee a conveyance of these lands with the parol promise to allow grantors (erstwhile mortgagors) to "redeem" at any time within two years from the date of the deed by paying the consideration named in the deed—a copy of the deed not being exhibited with the bill—and, within two years from the date of the foreclosure sale and subsequent to the execution of the deed mentioned, the erstwhile mortgagors filed this, their bill to enforce statutory redemption. The principles of law applicable to the case made by the bill are all thoroughly settled in this jurisdiction. There being no facts averred to impeach the foreclosure sale, nothing remained thereafter in the mortgagors but the statutory right of redemption; the relation of mortgagor and mortgagee was thereby completely severed and the respondent's (appellant's) attitude of a purchaser at the foreclosure sale was established. Jackson v. Tribble, 156 Ala. 480, 489, 490, 47 South. 310. This purchase at the foreclosure sale operated to vest in the purchaser the legal and equitable title, and cut off the equity of redemption. Hambrick v. New England Mortgage Security Co., 100 Ala. 551, 13 South. 778; Mewburn v. Bass, 82 Ala. 622, 2 South. 520; Cooper v. Hornsby, 71 Ala. 62. Such purchase by the mortgagee satisfied and discharged the mortgage debt in the amount of the mortgagee's bid as the result of operation of law. Harris v. Miller, 71 Ala. 26, 32, 33. For aught that appears from the bill, the mortgage debt was entirely extinguished as the result of the sum bid by the mortgagee. The bill affirms that the respondent went into possession of the land. It does not seek to disaffirm the foreclosure sale. Aside from numerous expressions that unmistakably evince the complainants' purpose to effect statutory redemption, the bill makes particular reference, by way of exoneration, to Code, § 5748, which is, itself, a part of the system of statutory redemption; though this section was amended by the act as pointed out in Morrison v. Formby, 191 Ala. 104, 67 South. 668. The agreement asserted in the bill as last amended, viz. to allow the complainants to redeem within two years from the date of the deed, was void because not in writing. Peagler v. Stabler, 91 Ala. 308, 311, 9 South. 157. Since there can be no mortgage without a mortgage debt (Farrow v. Cotney, 153 Ala. 550, 45 South. 69; Bell v. Shiver, 181 Ala. 303, 61 South. 881), it is not possible to interpret the deed from the complainants to the respondent as being, in effect, a mortgage. So long as the deed from the complainants to the respondent (purchaser at the foreclosure sale) is unimpeached, the complainants are without right

to assert statutory redemption; they having thereby parted with that right through the deed.

The suggestion that the deed may be canceled for fraud cannot be sustained on the averments of the bill as last amended. Assuming that the respondent promised when he took the deed to allow redemption within two years from the date thereof, the breach of the promise was not such a fraud as would authorize the cancellation of the conveyance. Patton v. Beecher, 62 Ala. 579; Holloway v. Smith, 198 Ala. 118, 73 South. 417. It is hardly necessary to add that the existence of fraud is never presumed or assumed.

In my opinion the court erred in overruling the demurrer. The bill is without equity as now constructed.