193 So. 152.

**LAMAR v. ROBERTSON BANKING CO. et al.**

**2 Div. 153.**

Supreme Court of Alabama.

Jan. 11, 1940.

Goodman Griffin, of Demopolis, and Theodore J. Lamar, of Birmingham, for appellant.

Henry McDaniel, of Demopolis, and Alex C. Birch, of Montgomery, for appellees.

GARDNER, Justice.

Annie G. Lyon, an unmarried woman, died in April 1936 owning certain real estate in and around Demopolis, Alabama. Complainant is a niece and an heir or devisee under the will of said Annie G. Lyon, and seeks by this bill the exercise of redemption rights of mortgage indebtedness of decedent secured by the real estate there described together with an accounting to that end. The real defendant is the Robertson Banking Company whose answer to all the matters and details of dealings running through the years may be summarized by the single contention that the property embraced in the mortgage was deeded by Annie G. Lyon to the bank, and ten shares of bank stock pledged were surrendered in full settlement of all the mortgage indebtedness, and the whole matter closed in September 1934.

██ ██ But as to this deed, complainant invokes the well recognized equitable principle that the court scrutinizes closely and with jealous care a transaction between mortgagor and mortgagee whereby the latter acquires from the former his equity of redemption, and will not permit a mortgagee to use his position of superiority to oppress the debtor, or drive an unconscionable bargain, or take any undue advantage. If such appears to have been the case, a court of equity will set aside the transfer and the mortgagor will be let in to redeem. Pearsall v. Hyde, 189 Ala. 86, 66 So. 665; Shaw v. Lacy, 199 Ala. 450, 74 So. 933; Strickland v. Strickland, 206 Ala. 452, 90 So. 345.

We have overlooked no detail of fact and studied the record with care. The cause was heard before the chancellor on oral proof, resulting in a decree denying relief, and from which this appeal is prosecuted.

Both the proof and argument have taken a wide range. But we think details may well be omitted, and the discussion here confined within narrow limits.

The purchase on December 8, 1925, by Annie G. Lyon of one hundred and nine acres of land, owned by her niece Frances R. Tibbs and then under mortgage to defendant bank, furnishes, it seems, the basis for this litigation. The indebtedness of Mrs. Tibbs to the bank aggregated at this time $5,588.13. There is no proof that Mrs. Tibbs was insolvent, but her mortgage was in default, and she was then unable to pay. George G. Lyon was a successful attorney of Marengo County bar and owner of much valuable property in and around Demopolis when he died many years ago. Annie G. Lyon was his daughter, and assisted him in the management of his property during his declining years. After his death, she likewise aided her mother and served as executrix of her estate. Among the properties mentioned belonging to the estate was a plantation of twelve hundred acres contiguous to Demopolis, and the one hundred and nine acres involved in the Tibbs matter were a part of this tract, acquired by Mrs. Tibbs in the distribution of the estate. It is clear enough that Annie G. Lyon was entirely familiar with this property. Some of her father's property had been sold for industrial sites,—Mrs. Tibbs herself making a sale at one hundred dollars per acre. Miss Lyon was a woman of education and culture, and certainly so far as concerned the estate of her father and mother, a woman of some business experience as well. The proof also shows she was an independent character, and one who exercised her own judgment. A very conservative business man of Demopolis, as far back as 1921, loaned $3,000 with this one hundred and nine acre tract as security. This acreage was bounded on one side by the railroad and the other by the Tombigbee River, and constituted one of two industrial sites so advantageously situated. It was in part subject to overflow, but evidence shows that other nearby sites were also in part at times overflowed.

On December 8, 1925, Miss Lyon accepted the deed of her niece Mrs. Tibbs to the one hundred and nine acres of land, and executed her demand note to the bank for the amount of the Tibbs indebtedness, and pledged to the bank the Tibbs mortgage. Later (November 23, 1929) Miss Lyon executed to the bank a mortgage on real estate other than the Tibbs property to secure $3,236.76, which indebtedness, on September 29, 1931, had

626

been reduced to $1,781.88. On September 29, 1931, the two matters of indebtedness were combined,—the Tibbs debt and the balance due on the sum later borrowed, totalling $8,236.71, and a mortgage given by Miss Lyon to secure this latter sum embracing the one hundred and nine acres, three hundred and twenty acres in Choctaw County, and ten shares of bank stock. It was this property in the mortgage of September 29, 1931, which was included in the deed of September 15, 1934 to the bank in full payment of the indebtedness.

As to the original transaction, complainant insists Miss Lyon was induced or overpersuaded to make the purchase of the one hundred and nine acres. But we find the proof insufficient to sustain the charge. True, the bank held Mrs. Tibbs' mortgage on the property. But it was Mrs. Tibbs who took the initiative to have the property sold for the debt. And her testimony not only shows this, but she makes it plain there was no pressure brought to bear,—she of her own free will taking the first step and asking the bank to get a purchaser. The president of the bank was W. S. Prout, now deceased, and Mrs. Tibbs, as well as all others making any reference to Prout, wanted it understood that he was a man of unimpeachable character. It was to Prout she had spoken. There is nothing to indicate the bank sought any advantage by a shifting of the indebtedness from Mrs. Tibbs to Miss Lyon, her aunt. Mrs. Tibbs had an agency contract with Coleman, real estate man, for a sale of the property, and he was endeavoring to get $75 per acre. Prout must have contacted Miss Lyon, as we find her in his office, and telephoning Coleman to come over. In the conversation, while these three were present, Prout expressed the opinion the property was worth $50 per acre. Miss Lyon requested Coleman to surrender the agency contract, which he did, and the purchase followed. Mrs. Tibbs had no information as to the purchase until the time of the execution of the deed.

True, Miss Lyon is shown to have had much confidence in Prout. So had they all, for that matter. But there was no confidential relationship shown between the two. Certainly the ownership of ten shares of stock did not suffice for such purpose, nor the fact she was a small depositor at the bank. He was in no manner her adviser, and her dealings with him appear to have been limited to the bank loans made. And at this time, it must be kept in mind, there was more or less excitement in regard to land matters. A cement plant had been located, and there was talk of another. There is ample proof the property was suitable as an industrial site, and with few left with transportation facilities so good. True, also, all of this may have changed for the worse, the depression came, and industrial plants were seeking no more sites; and it now appears Miss Lyon made a bad investment. But on this date (December 1925), the evidence was ample to sustain the conclusion this property did have value as an industrial site, and Prout's estimate of its value was fully justified. Prout was merely expressing his opinion. Miss Lyon was well acquainted with the property, and she was a woman of independent character and judgment. Perhaps she was somewhat influenced by Prout's opinion as well; Coleman himself entertained the same view. But, as above stated, Prout occupied no relation of a confidential character and had merely contacted Miss Lyon at the request of Mrs. Tibbs. But we forego further discussion.

We are unable to see wherein the transaction should be invalidated, or that there is due to be had any accounting in regard thereto.

As to the deed of September 15, 1934, little need be said. True, Miss Lyon's financial affairs had grown worse, and naturally the bank wanted something done as to the indebtedness. But the idea of a deed in satisfaction of the debt did not originate with the bank. It was the suggestion of her own attorney with whom she advised. He it was who suggested this course, and he it was who approached the bank authorities with the proposition. It was accepted only after different conferences. The settlement left her with some, though little property. But it relieved her of any consequences as to a deficiency judgment and relieved her mind as well. Let it be borne in mind that throughout these years of business dealings Miss Lyon herself made not a single complaint, and so far as appears from this record was reconciled to a bad bargain if she had made one. Time with financial reverses had brought about many changes, all of which she doubtless realized.

There is cogent argument for defendant rested upon the theory of laches. But

we have brushed aside all of these questions, preferring to rest our decision upon the meritorious question of fact involved.

The proof shows no undue advantage, or any sign of oppression in the deed of September 15, 1934, for it was but the result of Miss Lyon's own attorney suggesting the plan to the bank, and with whom she had advised regarding the matter. And it is clear enough there was ample proof before the chancellor to show there was no great disparity between the valuation of the property surrendered and the debt it secured. Furthermore, the chancellor saw and heard the witnesses in this case, and there is nothing in the record which would justify a disturbance of his conclusion on the facts.

There is some suggestion in argument that the Tibbs debt was paid May 31, 1926, —this for the reason the collateral note bearing date December 8th has a notation of payment as of May 31, 1926. No one pretends to say this debt was actually paid, and this item is carried forward in subsequent transactions with no claim of payment. We think it reasonable enough the note was surrendered at some interest period, and a new obligation given. We do not feel that this insistence calls for further discussion.

It results from our consideration of the case that the decree is free from error, and due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.