JAMES E. CASSIDY

*v.*

JOHN A. COOK *et al.*

*Filed at Ottawa June 20, 1881.*

1. SALE UNDER TRUST DEED—*sale en masse.* A clause in a deed of trust authorizing the trustee to sell the premises "entire, without division, or in parcels," as he may "think best," will not prevent the owner from insisting that it was the duty of the trustee to offer the property in parcels; and when it is shown that a sale in parcels would have been more advantageous, and that the trustee was requested to offer the property in parcels, a sale *en masse* will be set aside, on bill by the grantor in the trust deed. Such a clause does not give an arbitrary discretion to the trustee.

2. SAME—*duty of trustee.* A trustee's duties under a deed of trust are not merely formal. It is his duty, in the faithful discharge of his trust, to inform himself as to the condition of the property which he is about to sell, and to adopt that course which in his judgment will bring the highest price.

3. CONVEYANCE—*description of house and part of lot.* Where one building is so constructed upon a lot as to constitute five separate houses, each with a yard and stable attached in the rear, the houses and barns will furnish monuments for boundaries and descriptions in a deed for the same, when sold separately.

25—99 ILL.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding.

On the 7th of March, 1870, Cassidy borrowed from the Sullivant Savings Institution $16,000, and gave therefor his note, payable five years after date, with interest at the rate of 9 per cent per annum, payable semi-annually, and to secure the payment of the same he and his wife executed to Frank R. Chandler a deed, conveying to him, as trustee, a tract of land described in the deed as " lot 30, Ellis' east addition to Chicago, fronting on Langley and Thirty-eighth streets and Johnson Place, in Chicago. Said Johnson Place is not yet open on the west side of said lot 30." The interest upon this note seems to have been paid until the installment which fell due September 7, 1874. The deed contained a provision, that upon failure to pay any installment of interest the whole sum might be treated as due, and that in such case sale might be made at once, upon notice. In such case the trustee was, by the terms of the deed, authorized " to sell said premises entire, without division, or in parcels, as (he) said party of the second part may *think best.*" Accordingly Chandler, the trustee, having given the notice required, proceeded to sell the property *en masse,* at public sale, on the 14th day of October, 1874, and at that sale the property was struck off and sold to Cook for the sum of $17,265.

On the same day Cassidy filed this bill in the Superior Court of Cook county, seeking a decree that this sale be set aside. Answers were filed, and replications, and proofs taken, and upon final hearing the bill was ordered to be dismissed. Cassidy, by writ of error, brings the case here for review.

The bill charges the trustee with a fraudulent combination with Cook, to enable Cook to buy at a price less than the real value of the property, and that the property was, at the time of the sale, worth $50,000; that the property would have brought a better price if sold in parcels, and that certain per-

sons attending the sale bid or offered to bid for portions of the property at a higher rate.

The proof failed to show any combination between the trustee and Cook, but it did show that a block of five houses had been built upon a part of the property, each house having a back yard and stable in the rear reaching to an alley, and that the residue of the ground had been surveyed and laid out into six lots, which were vacant. This survey and plat had not been recorded.

The proof also showed that persons attended the sale for the purpose of bidding on some parts of the property, if sold in parcels. It is also shown that the trustee was requested, on behalf of the debtor, Cassidy, to offer the property in separate parcels, which he refused to do. There is evidence tending to show that had it not been for the avowed determination of the trustee to sell the whole property *en masse*, there would have been bids to at least $3000 for each house, and probably to as much as $900 for each of the vacant lots, or in other words, that the property might have been sold for over $20,000. But this proof is not very definite.

Mr. W. T. BURGESS, for the plaintiff in error:

The clause in the trust deed, " to sell said premises entire, without division, or in parcels, as said party of the second part may think best," confers no other or greater power than the trustee had without it. His discretion is subject to review, if so exercised as to prejudice the parties to the trust. A trustee is bound to bring the estate to the hammer under every possible advantage to his *cestui que trust*. Hill on Trustees, 479; *Downs* v. *Grazebrook*, 3 Mer. 208.

This court has repeatedly sanctioned this rule, for these trusts are capable of great abuse unless closely watched by the courts, and sales under them are set aside when oppression, unfair dealing or sacrifice of the property is shown. *Waterman* v. *Spaulding et al.* 51 Ill. 425; *Coswell* v. *Ross*,

33 id. 244; *Taylor* v. *Hopkins,* 40 id. 442; *Warnecke* v. *Lembca,* 71 id. 91; *Mason* v. *Ainsworth,* 58 id. 163.

Mr. JAMES SPRINGER, for the Chandlers, defendants in error:

The authorities in plaintiff's brief are not applicable to this case, under the evidence adduced. Such a sale will not be set aside without some sufficient equitable reason being shown, especially where the power is exercised as given. *Fairman* v. *Peck et al.* 87 Ill. 161.

It is only on the ground of fraud, or that some one has been prejudiced by the sale of land *en masse,* that the sale will be set aside. *Prather* v. *Hill,* 36 Ill. 404.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

It is claimed that the complainant can not be allowed to insist that it was the duty of the trustee to offer this property in parcels, inasmuch as he had, by his own deed, authorized him " to sell said premises *entire, without division,* or in parcels," as he might *"think best."* This does not necessarily follow. The power given, by its very terms, implies that the trustee assumed the duty of thinking on the subject, and that he should adopt that course which he should think would be best to secure a good price. It does not mean that the trustee may do as he may please, or that he may do that which should be the most convenient for him. There is no evidence in the case tending to show that the trustee did, in fact, think that this property would sell for a better price " entire, without division," than it would if sold in parcels, except what may be inferred from the fact that he did so sell.

On the other hand, but a few months before the sale occurred the proof shows that Cook negotiated with Cassidy for the purchase of this very property, at the nominal price of $55,000, $2000 of which was to be paid in cash to Cassidy, and $16,000 thereof was to discharge this incumbrance, and $5000

thereof was to discharge another and junior mortgage on the same property, being in cash or its equivalent the sum of $23,000, and for the balance he was to give a team of horses and a conveyance of certain real estate out of the city. It is said, in this proposed exchange of property the prices were nominal, and inflated in terms beyond their cash value. This may be so, but the actual cash Cook was to pay if the arrangement had been carried out, was $23,000, and interest on the same from March, 1874. This would be over $5000 more than the amount of this bid, assuming that the team of horses and the lands out of the city were worth nothing. In the absence of proof to the contrary, it may be safely assumed that five houses (each with a yard and stable attached), so constructed as to constitute five separate dwellings, although built together as one block of buildings, would, in all probability, bring a better price if sold separately than if sold *en masse.* When it is shown that the attention of the trustee was called to the true condition of this property, and that he was requested to offer it in separate parcels, and suggestions were made that purchasers desired an opportunity to bid on certain parts of the property, we can not doubt that it was his duty to have offered the property in separate parcels. Although the survey and plat of the subdivision of this lot had not been recorded, still the houses and barns were there. These furnished monuments for boundaries and descriptions. It may be that the vacant sub-lots should have been sold in one body. Prudence, however, would dictate that resort should have been had to the experiment of selling these separately. A trustee's duties are not merely formal. It is his duty, in the faithful discharge of his trust, to inform himself as to the condition of property which he is about to sell, and to adopt that course which, in his judgment, will bring the highest price.

The decree is reversed, and the cause will be remanded, that the sale may be opened and such proceedings had under the direction of the court as will allow Cassidy to redeem upon

just terms, in a reasonable time to be fixed by the court, and in default of such redemption that the property be again offered for sale, in such manner as, in the judgment of the court, will be most conducive to obtaining the highest price; and if, upon such biddings, any material addition can be made to the net proceeds of such sale, then the sale heretofore made shall be entirely set aside, and the property disposed of under' the new sale, but if no material addition can be made to the net proceeds of the original sale, then such sale shall be confirmed by the court, and the costs of the proceedings shall, in such case, be taxed against Cassidy.

*Decree reversed.*