(87 South. 105)

## BANK OF NEW BROCKTON v. DUNNAVANT. (4 Div. 859.)

(Supreme Court of Alabama. Nov. 11, 1920.)

**1. Mortgages ⏎360—In equity power of sale is a trust.**

Though in a court of law a power of sale in a mortgage is merely part of a legal contract to be executed according to its terms, in a court of equity it has the elements of a trust, and the donee is charged with the duty of fairness and good faith in its execution, to the end that the mortgagor's property may be disposed of to his pecuniary advantage.

**2. Mortgages ⏎369(3)—Sale under power of separate tracts en masse is invalid.**

Where the mortgagee of separate tracts of land sold them en masse under his power of sale, thereby realizing a price much less than the real value, the sale will be set aside in equity, letting the mortgagor in to redeem.

**3. Mortgages ⏎358—Broad power of sale held not to authorize sale en masse.**

A provision in a mortgage authorizing sale when, as, and where the mortgagee deemed best, does not nullify the duty of the mortgagee enjoined by law to sell the property separately instead of en masse, if that will be for the benefit of the mortgagor.

**4. Equity ⏎232—Mortgages ⏎369(7)—Bill held to be for redemption with incidental relief; bill good in one aspect not subject to demurrer as a whole.**

A bill attacking a sale under power contained in a mortgage because made en masse, and because after the sale the mortgagee agreed to exclude from the debt improper items and to allow the mortgagor to redeem, which bill prayed for an accounting and for permission to redeem from the sale, was nothing but a bill to redeem, the other relief prayed being incidental only; and where, in one aspect, it was not subject to demurrer as a bill to redeem, it was not subject to demurrer to the bill as a whole.

**5. Mortgages ⏎378—Sale under power extinguishes debt and substitutes statutory right to redeem.**

A sale under the power contained in mortgage with or without deed to the purchaser is effective as to the mortgagor and his heirs to cut off his equity of redemption, extinguishing

the debt and the former relation of the parties, and subjecting them to the new status and obligations prescribed by Code 1907, § 5746 et seq., governing redemption.

**6. Frauds, statute of ⬤⟿56(4)—Agreement to reinstate mortgage after sale under power is within statute.**

An agreement by the mortgagor after foreclosure under power of sale to reinstate the mortgage as a mortgage and to give the mortgagor his equity of redemption is a reconveyance to the mortgagor of an equitable estate in land, which cannot be enforced under Code 1907, § 4289, where it was not in writing or accompanied by a delivery of the land.

**7. Frauds, statute of ⬤⟿129(4)—Retention of land by mortgagor as tenant held not to satisfy statute, so as to give effect to an oral agreement restoring his equity.**

The retention of mortgaged premises by the mortgagor after foreclosure under power of sale as tenant of the mortgagee, who purchased at the sale, was not a delivery of the land to the mortgagor sufficient to satisfy the requirement of the statute, and give effect to an oral agreement by the mortgagee to reinstate mortgage and give the mortgagor his equity of redemption.

**8. Mortgages ⬤⟿34 — Evidence to show deed was mortgage limited to contemporaneous agreement.**

The rule that in equity a written conveyance, absolute in form, will operate only as a mortgage if there was a continuing debt, and the parties contemporaneously intended the conveyance to be security, is an exception to the general rule as to the qualifying effect of parol evidence, and will not be extended to a parol agreement made after the act of passing the title is executed.

**9. Landlord and tenant ⬤⟿61—Tenant cannot question landlord's title in equity.**

The general principle that a tenant who receives possession from his landlord by virtue of his lease cannot, while retaining that possession, assert a title in hostility to that of his landlord, is effective in courts of equity as well as of law.

**10. Landlord and tenant ⬤⟿62(1)—Attornment of tenant procured unfairly does not estop attack on title.**

Where the tenant's attornment has been procured unfairly or oppressively, he being already in possession in his own right, his estoppel to attack his landlord's title will not be enforced, particularly in a court of equity.

**11. Landlord and tenant ⬤⟿62(1)—Attornment held not to estop claim of right to redeem.**

Where a mortgagor while still in possession was induced to forego a proceeding to set aside the foreclosure by sale under power upon the mortgagee's promise to continue the original relation of mortgagor and mortgagee, and to attorn and pay rent upon the promise that the rent would be credited upon the mortgage debt, the mortgagee's promise, though the part of it relating to restoration of the relation could not be enforced under the statute of frauds, prevents estoppel of the mortgagor as tenant to attack his landlord's title.

**12. Mortgages ⬤⟿369(1) — Subsequent agreement held not waiver of right to attack sale under power.**

A parol agreement subsequent to foreclosure under power of sale, whereby a mortgagee agreed to restore the previous relation between the parties, by its very terms negatives confirmation of, or acquiescence in, the foreclosure sale by the mortgagor, and is not a waiver of his right to attack that sale.

**13. Mortgages ⬤⟿369(7)—Bill held not to seek redemption under statute.**

A bill to redeem from a mortgage after sale under power for the reason that the sale was invalid because made en masse and not by separate tracts, and because the mortgagor had subsequently agreed to restore the mortgage, is not a bill for redemption under the statute, and grounds of demurrer based upon that theory of the bill are inapt and without merit.

Appeal from Circuit Court, Coffee County; A. B. Foster, Judge.

Bill by J. J. Dunnavant against the Bank of New Brockton to redeem from foreclosure. From a decree overruling the demurrers to the bill, respondent appeals. Affirmed.

The bill seeks to set aside a foreclosure sale under the power contained in the mortgage, to cancel the foreclosure deed as a cloud on his title, to ascertain by an accounting the amount of the mortgage debt after elimination of usury and other illegal charges, and for redemption by the mortgagor, who files the bill.

The amended bill shows the following material facts:

Complainant executed a mortgage to respondent bank on January 4, 1916, on two valuable farms to secure his promissory note of even date for the sum of $5,001.56, which covered the balance of complainant's indebtedness to said bank, resulting from several years of credit transaction between them, as claimed by the bank, but which included about $3,000 of usurious interest. At the time of executing these instruments complainant denied that he owed so large a sum, but consented to do so provisionally upon the verbal promise of the bank to go over the items of the account with him at some later time and strike out such items as were not agreed upon as correct. Thereupon he called upon the bank several times to carry out this agreement, but was put off from time to time, until finally he was informed that the bank was preparing to foreclose.

The mortgage contains the following provisions to be effective in case of default:

"The mortgagee or its assigns are authorized to sell said * * * real estate at public outcry or private sale, with or without notice of time, terms and place of sale, at their elec-

tion; and, in case they give notice, to determine what kind they will give; to make said sale when, as, and where it shall seem best to them, for cash or on credit; to become purchasers at said such sale; * * * and to make deeds of conveyance to the purchasers at the sale."

After giving some kind of public notice of six or eight days, on December 28, 1916, the bank made a pretended foreclosure of the mortgage, and without complainant's consent sold en masse both tracts of land, which were separate and distinct farms lying a mile apart; one containing 470 and the other 321 acres. The bank's attorney was the auctioneer, and he knocked the property off to the bank, who was the only bidder, at and for $5,517.45, the full amount of the mortgage debt claimed. Complainant thereupon challenged the fairness of the sale and the amount of the debt claimed, and informed the bank that he would at once begin suit to enforce his rights. Respondent then agreed that if complainant would forego his threatened suit its officials would go over the account with him and eliminate all items as agreed to as not correct, and if he would sign a rent note the rents paid thereunder would be credited on the debt, and he would be allowed two years after said adjustment to redeem the property. It was further agreed that the mortgage should be retained by the bank, and not marked "satisfied," but held as security for the debt to be ascertained. The other material allegations of the bill and grounds for demurrer sufficiently appear from the opinion.

W. W. Sanders, of Elba, for appellant.

The amended bill relates back to the commencement of the suit as of the date of the filing of the original bill. 75 Ala. 46, Simms, Chancery Practice, § 357. A tenant cannot dispute the title of his landlord, while occupying the leased premises. 130 Ala. 530, 30 South. 488, 54 L. R. A. 749, 89 Am. St. Rep. 55; 187 Ala. 230, 65 South. 790; 191 Ala. 158, 67 South. 684; 16 R. C. L. 659. The agreement set up in the bill for repurchase cannot rest in parol or be established by parol evidence. 84 Ala. 309, 4 South. 170; 91 Ala. 308, 9 South. 157; 94 Ala. 337, 10 South. 906; 202 Ala. 115, 79 South. 581. The mortgagor and mortgagee may make such contracts as to powers and conditions as to them may seem proper, and the courts will enforce them, however unwise or improvident. 161 Ala. 504, 49 South. 845; 186 Ala. 360, 64 South. 621. The sale cut off complainant's equity of redemption. Sections 5746, 5747, Code 1907; 82 Ala. 622, 2 South. 520; 92 Ala. 164, 9 South. 143, 13 L. R. A. 299; 203 Ala. 228, 82 South. 478. The sale and rental terminated the relation. 71 Ala. 26; 92 Ala. 480, 9 South. 176; 156 Ala. 480, 47 South. 310; 192 Ala. 176, 68 South. 349.

H. L. Martin, of Ozark, for appellee.

The deed was not made as provided by the power. 50 S. E. 111; 78 Ala. 88; 87 Ala. 569, 6 South. 386; 105 Ala. 399, 17 South. 91; section 1789, Code 1907. As to what the Bank of New Brockton acquired by the sale, see 3 Jones on Mortgages, §§ 1679–1681; also section 1907. The sale under the power was not valid. 118 N. C. 532, 24 S. E. 367; 73 Ala. 130; 10 Mo. 75; 95 Ala. 272, 11 South. 211; 100 Ala. 552, 13 South. 778. The agreement was that the amount of rent should go on the amount of the mortgage debt, and therefore the equity of redemption was not cut off. 143 Ala. 675, 39 South. 380; 124 Ala. 140, 26 South. 902. The sale should not have been en masse. 2 Wiltsie, Mortgage Foreclosure, § 1052; 128 Ill. 129, 22 N. E. 1005; 42 Minn. 476, 44 N. W. 985, 8 L. R. A. 50.

SOMERVILLE, J. The allegations of the bill present two distinct theories upon which the right of redemption is grounded: (1) That the foreclosure sale under the power is voidable at the instance of the mortgagee because the two farms, which are separate and distinct in location, equipment, and use, were sold en masse, which was highly disadvantageous and injurious to the mortgagor; that the mortgagee was the only bidder; and that the price of $5,517.45, which was bid and paid for the entire property, was grossly disproportionate to its real value, which was not less than $20,000; and (2) that, though the foreclosure sale were valid, the verbal agreement between the mortgagor and mortgagee, made thereafter, was an effective waiver of the mortgagee's rights under that sale, so as to keep alive the original indebtedness and preserve the original relation of the parties, with an extension of the time for payment.

[1] "In a court of law a power of sale is merely part of a legal contract to be executed according to its terms. In a court of equity it is quickened with the elements of a trust, and the donee of the power is charged as a quasi trustee with the duty of fairness and good faith in its execution, to the end that the mortgagor's property may be disposed of to his pecuniary advantage in the satisfaction of his debt." Harmon v. Dothan Nat. Bk., 186 Ala. 360, 369, 64 South. 621, 624. To the same effect is Dozier v. Farrior, 187 Ala. 181, 65 South. 365, cited in note, L. R. A. 1917B, 527, 528.

[2, 3] In Dozier v. Farrior, supra, it was held that a sale, under the power, of widely separated tracts, devoted to separate and distinct uses, made en masse, and bringing for the property a price greatly less than its real value, would be set aside in equity, letting the mortgagor in to redeem. In this aspect of the bill its allegations are sufficient to authorize the relief prayed, and the demur-

rer was properly overruled. We do not overlook respondent's .contention that the mortgagee's equitable duty in the premises was abrogated by that provision of the power which authorized a sale "when, as, and where it shall seem best to them, for cash or on credit." A court of equity, however, will not allow the mere latitude of the mortgagee's discretion—a specific mode not being prescribed—to nullify a duty enjoined by law as essential to the ends of justice, and constituent in the obligations of a trust. As said by the Supreme Court of Illinois in a similar case: .

"The power given, by its very terms, implies that the trustee assumed the duty of thinking on the subject, and that he should adopt that course which he should think would secure a good price. It does not mean that the trustee may do as. he may please, or that he may do that which should be the most convenient for him." Cassidy v. Cook, 99 Ill. 385, 388.

[4] One of the demurrers is. addressed to the bill "as a bill to redeem," and the other is addressed to the bill "as a whole." The bill, however, is nothing but a bill to redeem, other relief prayed being incidental only; and hence, not being subject to demurrer in one of its aspects as a bill to redeem, both demurrers were properly overruled.

Some of the grounds of demurrer, though not limited, as they should have been, to that aspect of the bill which grounds the right of redemption on a parol agreement in derogation of the legal status resulting from the foreclosure sale, may be of vital importance in the future progress of the cause, and we shall therefore consider their merit on this appeal for the guidance of the trial court.

[5] Conceding, without deciding, that the deed executed to the mortgagee, as purchaser at the sale, by its cashier, was not properly executed in the name of the mortgagor by the donee of the power, nevertheless the foreclosure sale, with or without a deed to the purchaser, was effective as to the mortgagor and his heirs to cut off the equity of redemption, extinguishing the debt and the former relation of the parties, and subjecting them to the new status and obligations prescribed by the statute (Code, § 5746 et seq.) governing redemption. Cooper v. Hornsby, 71 Ala. 62; Comer v. Sheehan, 74 Ala. 452; Mewburn's Heirs v. Bass, 82 Ala. 622, 2 South. 520; Welch v. Coley, 82 Ala. 363, 2 South. 733; Durden v. Whetstone, 92 Ala. 480, 9 South, 176; Tipton v. Wortham, 93 Ala. 321, 9 South. 596; Hambrick v. N. E. M. Sec. Co., 100 Ala. 551, 13 South. 778; Drake v. Rhodes, 155 Ala. 498, 46 South. 769, 130 Am. St. Rep. 68.

[6, 7] This being the state of the title as between the mortgagor and mortgagee after the foreclosure sale, and the mortgagor's right of redemption being thereafter statutory only, and limited by law to a period of two years from the date of the sale, it is clear that, under the theory of mortgages and mortgage titles prevailing in this state, no parol agreement of the parties to reinstate the original mortgage by a revival of its equity of redemption and extension of the debt can be given effect, since it would contravene the statute of frauds (Code, § 4289). The asserted effect of that agreement was to reconvey to the mortgagor an equitable estate in the land—a result that could be effected only by a signed memorandum of the agreement, or by a delivery of the land to the mortgagor as owner, accompanied or followed by a payment of some part of the purchase price. The retention of the land by the mortgagor, under an agreement to hold it as tenant and pay rent for its use, did not satisfy the requirements of the statute.

[8] The facts of this case sharply distinguish it from those cases which hold that in equity a written conveyance, absolute in form, will operate only as a mortgage, if there was a continuing debt, and the parties contemporaneously intended and agreed that the conveyance should be a mere security. In such cases the admissibility and qualifying effect of the parol agreement is an exception to the general rule of evidence. Chapman v. Hughes, 14 Ala. 218, 220. It concerns, not the sale of an interest in land, but the reservation of an interest in the grantor. That exceptional rule of equity has never been extended, and cannot consistently be extended, to parol agreements affecting the title to land which are made, not contemporaneously with the act of passing the title, but after that act is executed and past. It is the concurring intention of both parties at the time of its execution that qualifies the operation of the deed. Rodgers v. Burt, 157 Ala. 91, 104, 47 South. 226; English v. Lane, 1 Port. 328, 352.

In the instant case, the agreement relied on was, in ultimate. effect, nothing more than a parol promise to reconvey an already perfected title upon the payment of an amount to be ascertained as due within two years after such ascertainment.

In Patterson v. Holmes, 202 Ala. 115, 79 South. 581, there was a foreclosure by sale under power, but no deed was executed to the mortgagee purchaser. Upon the mortgagee's insistence, the mortgagor soon afterwards executed to him a deed absolute in form, upon the agreement in parol that the grantor could redeem the property at any time within two years thereafter by paying to the grantee the amount of the recited consideration, which was the mortgage debt with 10 per cent. interest. Justice Sayre, the writer of the opinion, Justice Thomas concurring, expressed the view that the parol. agreement, made contemporaneously with the grantor's deed, was effective in equity to convert the

deed into a mortgage. The basis for that conclusion, if we understand the opinion correctly, was that the foreclosure was imperfect and that the debt survived, so that the mortgagor's voluntary deed thereafter was subject to the equitable rule which recognizes its qualification by a contemporaneous parol agreement for redemption. The other five Justices, including the present writer, did not agree to that conclusion, and opinions contra were filed by the Chief Justice and Justice McClellan.

In the instant case, there is no basis whatever for the application even of the minority view expressed by Justices Sayre and Thomas in Patterson v. Holmes, supra, in view of the fact that there was no conveyance by the mortgagor to which the parol agreement was attached, and by which alone it could be vitalized.

It remains now to consider two other contentions of the mortgagee, appellant here, which are presented by apt grounds of the demurrer, and which go to the equity of the bill as a whole, viz.: (1) That the mortgagor was a tenant of the mortgagee at the time of filing this bill, and hence is estopped from disputing his title pending the tenant's possession thus acquired; and (2) that the parol agreement set up in the bill, and the mortgagor's conduct in relation thereto, show a confirmation by him of the foreclosure sale, and a waiver of the equitable grounds now asserted for its impeachment.

[9, 10] 1. While the general principle that a tenant who receives possession from his landlord by virtue of his lease cannot, while retaining that possession, assert a title in hostility to that of his landlord, is effective in courts of equity as well as of law (Davis v. Williams, 130 Ala. 530, 30 South. 488, 54 L. R. A. 749, 89 Am. St. Rep. 64; McLeod v. McEachern, 187 Ala. 230, 65 South. 790), yet the rule has well-recognized qualifications and exceptions (Farris v. Houston, 74 Ala. 162, 167). And where the tenant's attornment has been procured unfairly or oppressively, the tenant being already in possession in his own right, the estoppel will not be enforced, particularly in a court of equity.

[11] Here, the mortgagor was induced to forego his contemplated proceeding to set aside the foreclosure sale upon the mortgagee's promise to continue the original relation of mortgagor and mortgagee and to relieve the account of all improper charges, and was induced to attorn and pay rent upon the promise that it would be credited upon the mortgage debt. The mortgagee's major promise was not enforceable because of the statute of frauds, but as an equitable factor in the mortgagor's attornment as tenant it cannot be disregarded by a court of equity, but will be treated as a dependent covenant, working a counter estoppel upon the mort-

gagee in the assertion of his title as foreclosure purchaser and technical landlord; and, as Lord Coke wrote centuries ago, "An estoppel against an estoppel setteth the matter at large." See 16 Cyc. 748, 5. In the case of Sadler v. Jefferson, 143 Ala. 669, 674, 39 South. 380, 382, a mortgagor's similar agreement to pay annual rent after default was held to be no estoppel against his prosecution of a bill for redemption without first surrendering possession; the court observing:

"The mere fact that they called the $300, which was to be paid annually, 'rent,' did not create the relation of landlord and tenant in the face of the further agreement that this amount was to be credited on the amount due on the mortgage.".

We conclude that the enforcement of the asserted estoppel would, under the showings of the bill, be highly inequitable, and therefore cannot be sanctioned by a court of equity.

[12] 2. By the very terms of the parol agreement the foreclosure sale was repudiated by the parties, and the prior relation of mortgagor and mortgagee was attempted to be reinstated; and neither that agreement nor the payment of rent thereunder has any tendency to show confirmation of or acquiescence in the foreclosure sale by the mortgagor, but quite the contrary. There is no merit in that contention.

[13] Those assignments of demurrer based upon the theory that the bill is for redemption under the statute are inapt, and therefore without merit.

We hold that the demurrers were properly overruled, and the decree of the circuit court will be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.

---

⬤⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes