HOUSTON, Justice.
Coosa Valley Production Credit Association (Coosa Valley) filed a complaint against George C. Simpson in the Circuit Court of Calhoun County, seeking damages for negligence and breach of contract. The case was tried before the court, which found in favor of Coosa Valley. We reverse and render judgment in favor of Simpson.
The trial court’s judgment reads as follows:
“This cause comes on to be heard in open court with plaintiff and defendant being represented by counsel on a complaint filed by plaintiff against the defendant. Testimony was heard ore tenus by the Court, and the same being fully considered, and understood by the Court, the Court makes the following findings: Coosa Valley Production Credit Association (formerly Anni-ston Production Credit Association), is a sister bank to the Federal Land Bank of New Orleans, Louisiana, and was organized and is presently supervised by the Farm Credit Administration, Washington, D.C.
“The Court finds from the evidence that Coosa Valley Production Credit Association has been in the business of making loans to qualified farmers in eleven Alabama counties for farming purposes since 1933.
“The Court finds from the evidence that James F. Adams came to Anniston Production Credit Association on February 15, 1979 and applied for a loan in the amount of $80,021.00. The Court further finds from the evidence that the loan application and financial statement of James F. Adams was approved by the Executive Loan Committee of Anniston Production Credit Association for $80,021.00, the amount applied for, on March 14, 1979.
*1030 “The Court further finds that on March 20, 1979, defendant, George C. Simpson, was a duly qualified and licensed practicing attorney in Lineville, Clay County, Alabama. Defendant, George C. Simpson, had on previous occasions rendered Certificates of Title to property which was being pledged as security for loans to plaintiff. Defendant, George C. Simpson, was well aware of the usual and customary proceedings required by plaintiff of attorneys who rendered to it Title Opinions or Certificates of Title.
“The Court finds from the evidence that on July 3, 1979, defendant rendered to plaintiff a Final Certificate of Title. The Final Certificate of Title reflected that James F. Adams, the loan applicant, did not own fee simple title to approximately 52 acres of land which was being pledged on a mortgage by James F. Adams to plaintiff. The mother of James F. Adams, Mrs. Hazel Adams, owned a life estate in an undivided one-half interest in and to the 52 acres of land together with all improvements situated and located on the property.
“The Court further finds from the evidence that the defendant notified plaintiff by a letter dated August 6, 1979, that defendant had prepared a deed which was dated March 15, 1978 and which had been executed by Mrs. Hazel Adams to James Adams. The letter further recited that the deed had been recorded in the Office of the Judge of Probate of Clay County, Alabama on August 1, 1979. The substance of the letter from defendant to plaintiff dated August 6, 1979 is as follows:
“ ‘The exception relative to the failure to record a deed from Hazel Adams has now been satisfied. The deed to the property which was mortgaged to you from Hazel to James Adams was signed on March 15, 1978, and recorded in the Clay County Probate Office on August 1, 1979, in Deed Record 78, at page 923. This removes the exception relative to the failure of Hazel Adams to sign a deed or to sign your mortgage relative to the property mortgaged by James Adams.’ ”
“Plaintiff and Defendant, through their respective attorneys of record, stipulated in open court to the introduction into evidence of Attorney’s First Certificate of Title dated March 20, 1979, Attorney’s Final Certificate of Title dated July 3, 1979, and to a letter from defendant to plaintiff dated August 6, 1979. The Court finds from all of the evidence that defendant’s letter to plaintiff dated August 6, 1979 mistakenly related that the exceptions in the Attorney’s Final Certificate had been removed. In fact, the attorneys for the parties stipulated to the Court that at the time the letter dated August 6, 1979 was mailed to plaintiff that Mrs. Hazel Adams did not relinquish or convey her life estate in the property. The deed itself specifically recites the contrary, ‘the undersigned, Hazel Adams, does herein reserve from this conveyance, the use of the above described property for and during her lifetime.’
“The Court finds from the evidence that Mrs. Hazel Adams, mother of the loan applicant, James F. Adams, was bom on September 29, 1927. Mortality tables were introduced into evidence which reflected the number of years Mrs. Hazel Adams is expected to live. Mrs. Hazel Adams is at this time living in the house on the 52 acres of land in question in this case.
“The plaintiff’s testimony revealed that plaintiff had, on several consecutive weeks prior to the hearing in this cause, advertised the 52 acres of land together with the improvements thereon for sale in the Anni-ston Star, a newspaper published in Anni-ston, Calhoun County, Alabama. The property was also advertised in a newspaper published in Ashland, Clay County, Alabama. The 52 acres of land in question is all situated and located on State of Alabama Highway No. 9 near Delta, Clay County, Alabama. The property has not been sold. There were no favorable responses to the ad in the newspapers. The newspaper ad was introduced into evidence. The ad reflected that the land and improvements were being sold subject to the reservation of a life estate.
*1031 “Plaintiff has foreclosed on this property and plaintiff at the Foreclosure Sale was the successful bidder and bid the property in for $93,923.25. Defendant argues that plaintiff stands to be unjustly enriched by seeking a judgment against defendant since plaintiff has foreclosed on the property, and further asserts the argument that should Mrs. Hazel Adams die, that plaintiff would have a good and merchantable title to the 52 acres of land with improvements thereon. The Court recognizes that should Mrs. Hazel Adams die that her death would eliminate and terminate her life estate in the property. As to when Mrs. Hazel Adams may die, calls upon this Court to conjecture into an area of which it has no knowledge. The mortality tables introduced indicate that the life expectancy of Mrs. Hazel Adams would be in excess of twenty (20) years.
“Plaintiff, in open Court, made a tender to defendant of conveying all of its right, title, claim and interest that plaintiff has in and to the real estate in exchange for defendant assuming the loan applicant’s remaining existing indebtedness to plaintiff. The Court finds the ténder to be fair and equitable. In short, plaintiff is saying pay me and take whatever title it has in the real estate. This places defendant in exactly the same position as plaintiff regarding the number of years which Mrs. Hazel Adams may live and occupy the property. Should defendant elect to accept the tender made by the plaintiff, then in that event, defendant would stand to gain or lose in the precise way and manner that defendant argues plaintiff stands to gain by the unexpected early death of Mrs. Hazel Adams.
“The Court finds from the evidence that plaintiff disbursed to James F. Adams $7,800.00 on May 17, 1979 for grading; $1,532.82 on May 17, 1979 for gravel and related materials; $1,100.00 on June 1, 1979 for the installation of a well and pump; $39,710.00 on August 27, 1979; and $21,683.18 on September 24, 1979, which were all of the funds borrowed from plaintiff by James F. Adams. Mr. James F. Adams, in 1979, had a strong personal financial statement including, but not limited to, a $10,000.00 savings certificate. The disbursements for grading, gravel, well and well pump were disbursed based solely on the strong financial statement of James F. Adams. The remaining $61,393.18 was held by plaintiff pending the correction of title defects which were reflected by Attorney’s Final Certificate of Title. Payments were made by James F. Adams and his loan was renewed in 1980. When the title defect was discovered, no further payments were made to plaintiff. At this time, plaintiff notified the defendant, George C. Simpson, of its impending loss.
“Plaintiff called as its first witness Mr. William E. Morgan, Vice-President of the Federal Intermediate Credit Bank, New Orleans, Louisiana. Mr. Morgan was President of Anniston Production Credit Association when the loan application was made by James F. Adams and during the time when the funds were disbursed by plaintiff to James F. Adams. Mr. Morgan testified that in his professional judgment the 52 acres of land together with all improvements and with good and merchantable title in 1979 would be valued at $115,000.00 and the reasonable market value of the same property with the same improvements with an outstanding life estate in an undivided one-half interest would be valued at $15,000.00.
“The second witness called by plaintiff was Mr. Robert C. Meeks, a real estate broker and developer from Sylacauga, Alabama. Mr. Meeks’ qualifications to express an opinion on the value of the property were admitted and stipulated to by counsel for the defendant. Mr. Meeks testified that in his professional judgment the 52 acres of land together with the improvements thereon with good and merchantable title would be valued at $101,000.00 and the reasonable market value of the same property with the same improvements with an outstanding life estate in an undivided one-half interest would be valued at $25,000.00. This would be a difference of $76,000.00.
“Plaintiff called as its next witness Mr. Herbert Williamson, a real estate broker in *1032 Anniston, Alabama. He testified that he had viewed the property [and that it] together with the improvements thereon with good and merchantable title would be valued at $100,000.00 and the reasonable market value of the same property with the same improvements with an outstanding life estate in an undivided one-half interest would be valued at $12,000.00.
“Plaintiff also called Mr. Jack King, a licensed real estate broker in Anniston, Alabama, who testified that he examined and appraised the property with the view of rendering a judgment as to the fair and reasonable market value of the 52 acres of land [and that it] together with the improvements thereon with good and merchantable title would be valued at $95,-400.00 and the reasonable market value of the same property with the same improvements with an outstanding life estate in an undivided one-half interest would be valued at $10,000.00.
“It appears to the Court that Mr. William E. Morgan, Robert C. Meeks, Mr. Herbert Williamson, and Mr. Jack King were all experienced real estate appraisers. All of the witnesses were competent to testify regarding the fair and reasonable cash market value of the 52 acres of land together with all the improvements thereon, and all of the witnesses were competent to testify regarding the value of the same property with an outstanding life estate in an undivided one-half interest in the property held by Mrs. Hazel Adams.
“Defendant, George C. Simpson, testified in his own behalf. He was the only witness called by the defendant. Defendant, George C. Simpson, readily admitted that he submitted to Anniston Production Credit Association, now Coosa Valley Production Credit Association, Attorney’s First Certificate of Title dated March 20, 1979, Attorney’s Final Certificate of Title dated July 3, 1979, and further admitted writing a letter to plaintiff dated August 6, 1979. He further admitted drafting the deed dated March 15, 1979, which deed was recorded at 11:00 A.M. on August 1, 1979 in the office of the Judge of Probate [at] Ashland, Clay County, Alabama. That the deed did in fact, reserve a life estate in the 52 acres of land which had been pledged as security for a loan to James F. Adams by plaintiff.
“The Court has very carefully reviewed the entire file of plaintiff in connection with the loan of James F. Adams. The Court has made available to defendant every document in plaintiff’s file in any way material to this proceeding. The Court has very carefully considered all of the pleadings in this case, all of the exhibits introduced in this case by plaintiff and defendant, and all of the testimony presented during the trial of this case. The Court finds that defendant committed a serious error in advising plaintiff that all exceptions to good and merchantable title had been removed, and it further appears to the Court that plaintiff fully relied upon these representations to its detriment, harm, and financial loss.
“This Court has reviewed and studied arguments of counsel for many weeks. After a careful, considerate and deliberate study of the pleadings, exhibits, testimony of all of the witnesses for plaintiff and defendant, and arguments of the counsel representing plaintiff and defendant, in this cause,
“IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED by the Court that plaintiff, Coosa Valley Production Credit Association (formerly Anniston Production Credit Association), have and recover of defendant, George C. Simpson, the sum of $76,000.00, plus interest and all costs of Court incurred in this proceeding, for which execution may issue for the collection of same, if found necessary; except that in the event defendant elects to pay to plaintiff the sum of $93,923.25 being the amount bid at the Foreclosure Sale of the property by plaintiff, within a period of thirty (30) days from the date this judgment becomes final, then in that event, and simultaneous with the payment by defendant to plaintiff of the sum of $93,923.25 plaintiff shall execute and deliver to defendant a deed conveying to defendant all of the right, title, claim and interest that it has in and to the 52 acres of land together *1033 with all the improvements thereon, and which is more particularly described in plaintiff’s mortgage and in that certain deed dated March 15,1978 and recorded on August 1, 1979 in the Office of the Judge of Probate of Clay County, Alabama in Record of Deed Book 78, at Page 923.”
Simpson contends that the trial court erred in denying his motion for a summary judgment. He argues that Coosa Valley fully satisfied its debt when it foreclosed on the mortgaged property and purchased it at the sale for the full amount due on the loan plus interest, attorney fees, and expenses of the sale. We agree.
Coosa Valley made the loan to Adams under the mistaken assumption that it had sufficient security to protect its interests. Coosa Valley contended at trial that Simpson was liable to it for damages to the extent that its security was insufficient to satisfy the debt upon Adams’s default. The gravamen of Coosa Valley’s argument is that, as a result of Simpson’s negligence, it never had sufficient security on the loan which it made to Adams. It insists that since it acquired the property at the foreclosure sale, it has been unable to sell it and, therefore, that it has not been fully compensated for its loss.
The trial court agreed with this argument and assessed damages of $76,000. This was error, because, as the record shows, Coosa Valley foreclosed on the property and, with full knowledge of the outstanding life estate, purchased it for the full amount due on the loan plus interest and expenses.
In Aetna Ins. Co. v. Baldwin County Building & Loan Ass’n, 231 Ala. 102, 163 So. 604 (1935), the Court noted:
“It is a fixed principle that when a mortgagee forecloses his mortgage, and at the sale the property brings, and he collects the full amount of his debt, he is no longer a creditor, but his debt is paid. This is so when he buys at the sale, with due authority, bidding the full amount of his debt. He is then the owner of the property, and not a creditor. There is in the former owner only a. statutory right, which is not a property ownership. He has collected his debt as effectually as if another had bought the property and paid him the full amount as purchase money, or if the debtor had paid him in cash of his own accord. Alford v. Southern B. & L. Ass’n, 228 Ala. 412, 153 So. 864; Bank of New Brockton v. Dunnavant, 204 Ala. 636, 87 So. 105; Jones v. Meriwether, 203 Ala. 155, 82 So. 185; Harris v. Miller, 71 Ala. 26; Allison v. Cody, 206 Ala. 88, 89 So. 238.
“After the foreclosure, he can only collect the balance due on his debt, if any. Aetna Ins. Co. v. Hann, 196 Ala. 234 (8), 72 So. 48.” (Emphasis added.)
By purchasing the property at the foreclosure sale, Coosa Valley satisfied the debt owed by Adams as effectually as if another had purchased the property at the sale and paid the full amount as purchase money or if Adams himself had paid the debt of his own accord. Coosa Valley seeks to recover from Simpson on the basis that its security was insufficient to satisfy the debt owed by Adams. However, as stated, that debt has been satisfied. It is indeed regrettable that Coosa Valley could not find a purchaser for the property who was also willing to take it subject to the outstanding life estate. However, Coosa Valley made a conscious decision to purchase the property at the foreclosure sale, and with full knowledge of the outstanding life estate, paid the full amount due on the loan, plus interest and expenses. It would appear that a more prudent course of action for Coosa Valley to take in this case would have been to purchase the property at the foreclosure sale at its fair market value (reflecting the outstanding life estate) and then file suit against Simpson to recover the deficiency.
It was incumbent upon Coosa Valley to establish the element of damages. This it has not done. Coosa Valley chose to foreclose on the mortgage and accepted the encumbered property in full satisfaction of Adams’s debt. Coosa Valley simply cannot recover from Simpson for a loss resulting from an error in its own judgment.
*1034 The judgment of the trial court is reversed, and judgment is rendered in favor of Simpson.
REVERSED AND JUDGMENT RENDERED.
TORBERT, C.J., and MADDOX, JONES, BEATTY and STEAGALL, JJ., concur.
ALMON, SHORES and ADAMS, JJ., dissent.