PARKER, Justice.
Trenton Turner, Jr., and Donna Turner petitioned this Court for a writ of certiorari to review the Court of Civil Appeals' decision affirming a judgment entered by the Jefferson Circuit Court in favor of Wells Fargo Bank, N.A., as trustee for Carrington Mortgage Loan and Trust 2006-NC2 Asset-backed Pass-through Certificates ("Wells Fargo"), ejecting the Turners from real property located in Jefferson County ("the property"). See Turner v. Wells Fargo Bank, N.A., 254 So.3d 194 (Ala. Civ. App. 2016). We granted certiorari review to consider whether the Court of Civil Appeals' decision conflicts with this Court's decision in Jackson v. Wells Fargo Bank, N.A., 90 So.3d 168 (Ala. 2012). See Rule 39(a)(1)(D), Ala. R. App. P. For the following reasons, we conclude that the Court of Civil Appeals' decision in *208 this case does conflict with Jackson, and we reverse its judgment.
Facts and Procedural History
The Court of Civil Appeals set forth the relevant facts and procedural history in Turner, supra, as follows:
"In 2006, the Turners financed the purchase of the property by executing a promissory note ('the note') in favor of New Century Mortgage Corporation ('New Century'). Contemporaneously with the execution of the note, the Turners executed a mortgage in favor of New Century on the property as security for repayment of the note. The mortgage was recorded in the Jefferson Probate Court ('the probate court').
"The mortgage contained the following provisions that are pertinent to this appeal:
" '1. ... [I]f any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashiers check ...; or (d) Electronic Funds Transfer.
" '....
" '22. Acceleration Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument.... The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date not less than 30 days from the date the notice is given to Borrower by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform the Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.'
"According to affidavit testimony, on July 1, 2007, New Century transferred and assigned the note and the mortgage to Wells Fargo. Carrington Mortgage Services, LLC ('Carrington'), served as the loan servicer for Wells Fargo.... The assignment of the note and the mortgage was ultimately executed on February 1, 2012, and recorded in the probate court on February 15, 2012."
Turner, 254 So.3d at 197.
There was subsequently a dispute concerning the Turners' obligation under the mortgage, and Wells Fargo sought to foreclose on the property. The Court of Civil Appeals set forth the remaining pertinent facts:
"On November 30, 2011, Carrington sent a letter to the Turners notifying them of its intent to foreclose on the property, stating that the loan was in default ... and informing the Turners that the default could be cured by the Turners' tendering certified funds in the amount of $4,545.36. The letter further stated that *209 " '[f]ailure to cure the delinquency within 30 days of the date of this letter may result in acceleration of the sums secured by the Deed of Trust or Mortgage and in the sale of the property.
" 'You have the right to reinstate your loan after legal action has begun. You also have the right to assert in foreclosure, the non-existence of a default or any other defense to acceleration and foreclosure.'
"No evidence was presented showing that the Turners responded to the letter.
"On January 31, 2012, Trustee Management Company ('TMC'), on behalf of Wells Fargo, sent the Turners a notice of foreclosure sale stating that Wells Fargo had elected to accelerate the debt and notifying the Turners that the foreclosure sale was scheduled for February 27, 2012. The notice of the foreclosure sale was published in the Alabama Messenger newspaper on February 4, 2012, February 11, 2012, and February 18, 2012.
"The foreclosure sale was conducted on February 27, 2012, and Wells Fargo was the highest bidder. On the same day, a foreclosure deed was executed conveying title to the property to Wells Fargo, and a corrected foreclosure deed correcting a typographical error was executed the same day. The foreclosure deed was recorded in the probate court on October 16, 2012. The Turners did not vacate the property after the foreclosure sale.
"On November 14, 2012, Wells Fargo filed a complaint for ejectment against the Turners in the trial court. The Turners filed an answer on November 27, 2012, denying the ejectment claim and asserting certain defenses, including wrongful and unlawful foreclosure and that the notice of the foreclosure sale was defective."
Turner, 254 So.3d at 197-98. Ultimately, the trial court entered a summary judgment in favor of Wells Fargo, and the Turners appealed.
Standard of Review
"Questions regarding the legal effect of unambiguous contractual provisions are questions of law, which are reviewed de novo. Bon Harbor, LLC v. United Bank, 53 So.3d 82, 91 (Ala. 2010)." Jackson v. Wells Fargo Bank, N.A., 90 So.3d at 171.
Discussion
The Turners argue that the Court of Civil Appeals' decision is in conflict with Jackson. The particular portion of the Court of Civil Appeals' decision that the Turners argue conflicts with Jackson states:
"The Turners contend that Wells Fargo failed to give the Turners proper notice of foreclosure that is required pursuant to Section 22 of the mortgage, which states, in part, that such notice shall 'inform the Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.' The Turners contend that the November 30, 2011, notice of intent to accelerate sent by Carrington failed to include this explicit language. They contend that, because they did not receive proper notice required by the mortgage, Wells Fargo was precluded from foreclosing on the property and that the foreclosure sale is void.
"The November 30, 2011, notice stated, in pertinent part, that '[y]ou have the right to reinstate your loan after legal action has begun. You also have the *210 right to assert in foreclosure, the non-existence of a default or any other defense to acceleration and foreclosure.'
" 'Substantial performance of a contract does not contemplate exact performance of every detail but performance of all important parts.' Mac Pon Co. v. Vinsant Painting & Decorating Co., 423 So.2d 216, 218 (Ala. 1982). The November 30, 2011, notice substantially complied with the notice requirement of Section 22, and, therefore, Wells Fargo, through Carrington, substantially complied with the requirements of that section of the mortgage by sending the notice that included the aforementioned language. Therefore, there was no genuine issue of material fact before the trial court to support the Turners' claim that the notice was defective."
Turner, 254 So.3d at 203.
The Turners argue that the notice they received did not explicitly inform them of their right to bring a court action challenging the foreclosure. There is no question that the mortgage required Wells Fargo to notify the Turners of their right to bring a legal action; the mortgage states that Wells Fargo "shall further inform the Borrower of ... the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." The Court of Civil Appeals determined that Wells Fargo's notice to the Turners, which undisputedly did not inform the Turners of this right, nevertheless substantially complied with the notice requirement set forth in the mortgage. The Turners argue that Jackson requires strict compliance, not merely substantial compliance. We agree.
In Jackson, the mortgagors "refinanced an existing loan on their home .... In so doing, they gave a mortgage on the property, which was subsequently assigned to the bank." 90 So.3d at 169. The mortgage in Jackson included the same notice requirement as in the mortgage at issue in this case. The Jackson Court set forth the notice requirement, with the language relevant to the issue on appeal in that case emphasized, as follows:
" '22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument .... The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law....'
"(Emphasis added.)"
90 So.3d at 169 (final emphasis added).
The mortgagors eventually defaulted on the mortgage by failing to make the required payments. The mortgagors were sent the following notice, which was entitled "Notice of acceleration of promissory note and mortgage":
"'YOU ARE HEREBY NOTIFIED that, pursuant to the terms of the *211 Promissory Note and Mortgage dated the 11th day of February, 2005, to Mortgage Electronic Registration Systems, Inc. acting solely as nominee for The Mortgage Outlet, Inc., said mortgage having subsequently been transferred and assigned to [the trustee] and by virtue of default in the terms of said Note and Mortgage, [the trustee] hereby accelerates to maturity the entire remaining unpaid balance of the debt, including attorney's fees, accrued interest, and other lawful charges, and the amount due and payable as of this date is $37,040.27. This payoff amount may change on a daily basis. If you wish to pay off your mortgage, please call our office to obtain the updated figure.
"'We are at this time commencing foreclosure under the terms of the Mortgage, and enclosed is a copy of the foreclosure notice to be published in the Mobile Press-Register. Please note that the foreclosure sale is scheduled for August 15, 2008. If you wish to avoid losing the subject property, you must contact us immediately; otherwise, the foreclosure sale will take place as set forth in the publication notice, and we will take legal action to obtain possession of the subject property....'
"(Capitalization in original; emphasis added.) The foreclosure sale occurred on August 15, 2008, as advertised...."
90 So.3d at 170.
The mortgagors subsequently sued the bank, alleging that the bank breached the mortgage by failing to give the mortgagors the notice they were due under the terms of the mortgage. The mortgagors argued that the bank was required to give them notice of the bank's intent to accelerate the debt due under the mortgage, but that the notice the mortgagors received instead notified them that the debt had already been accelerated. 90 So.3d at 172. This Court agreed with the mortgagors. In so holding, this Court relied upon the following authorities:
" Dewberry v. Bank of Standing Rock, 227 Ala. 484, 492, 150 So. 463, 469 (1933) ('[A] sale under the power [of sale] in a mortgage or trust deed must be conducted in strict compliance with the terms of the power.'); Bank of New Brockton v. Dunnavant, 204 Ala. 636, 638, 87 So. 105, 107 (1920) (' "In a court of law a power of sale is merely part of a legal contract to be executed according to its terms." ' (quoting Harmon v. Dothan Nat'l Bank, 186 Ala. 360, 369, 64 So. 621, 624 (1914) )); Fairfax Cnty. Redev. & Hous. Auth. v. Riekse, 281 Va. 441, 446, 707 S.E.2d 826, 829 (2011) ('[T]he powers of the person foreclosing under a mortgage ... are limited and defined by the instrument under which he acts, and he has only such authority as is thus expressly conferred upon him, together with incidental and implied powers that are necessarily included therein.... Accordingly, the ... mortgagee must see that in all material matters he keeps within his powers, and must execute the trust in strict compliance therewith.')."
90 So.3d at 173. This Court concluded that the bank's failure to give the mortgagors the notice they were due under the terms of the mortgage resulted "in failure of the acceleration, and, consequently, failure of the foreclosure sale." Id.
In Jackson, as evidenced by its reliance on Dewberry v. Bank of Standing Rock, 227 Ala. 484, 150 So. 463 (1933), Bank of New Brockton v. Dunnavant, 204 Ala. 636, 87 So. 105 (1920), and Fairfax County Redevelopment & Housing Authority v. Riekse, 281 Va. 441, 707 S.E.2d 826 (2011), this Court held that a party seeking to *212 institute foreclosure proceedings must do so in strict compliance with the terms of the mortgage. In the present case, Wells Fargo did provide the Turners with notice of its intent to accelerate the debt. However, although required to do so under the terms of the mortgage, Wells Fargo failed to notify the Turners of their right to bring a court action challenging the foreclosure.[1]
Wells Fargo argues that Jackson has no application in the present case because, it says, Jackson is distinguishable. Wells Fargo argues that Jackson should be limited to situations where no notice is given. For instance, in Jackson, the mortgagors were given no notice of the bank's intent to accelerate before the bank purported to accelerate the debt owed by the mortgagors. Wells Fargo argues that the present case is different because the Turners were given notice of the intent to accelerate, just not notice of all of their rights. We fail to see a distinction. Although the Turners were given notice of certain of their rights under the terms of the mortgage, they were given no notice of their right to bring a court action directly attacking the foreclosure.[2] Jackson applies in this case and requires strict compliance.
*213 The Court of Civil Appeals held that Wells Fargo "substantially complied with the notice requirement." Turner, 254 So.3d at 203. The only authority relied upon by the Court of Civil Appeals in so concluding was this Court's decision in Mac Pon Co. v. Vinsant Painting & Decorating Co., 423 So.2d 216 (Ala. 1982). Mac Pon is not a case concerning a mortgage contract but a contract for the construction of a building. The question in Mac Pon was whether the contractor had substantially performed its duty under the contract to "apply one coat of clear silicone sealer and one coat of latex paint." 423 So.2d at 218. Mac Pon does not concern the issue presented in this case, which is whether a mortgagee is required to comply strictly with the terms of the mortgage in exercising its power to sell.[3]
The Turners have demonstrated that the above-quoted portion of the Court of Civil Appeals' decision is in conflict with Jackson. Wells Fargo failed to provide the Turners with proper notice under the mortgage. Accordingly, because Wells Fargo failed to comply with the requirements of the mortgage, the mortgage sale conducted on February 27, 2012, failed. See Jackson, 90 So.3d at 173 (holding that a foreclosure sale failed to pass title to the purchaser because the mortgagee failed to strictly comply with the terms of the mortgage in giving notice to the defaulting mortgagor).
Conclusion
Based on the foregoing, we reverse the Court of Civil Appeals' judgment and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, C.J., and Bolin, Shaw, Main, Wise, and Bryan, JJ., concur.
Murdock, J., concurs in the result.
Sellers, J., dissents.
I respectfully dissent. This Court granted Trenton Turner, Jr., and Donna Turner's petition for a writ of certiorari in order to consider their assertion that the Court of Civil Appeals' decision conflicts *214 with Jackson v. Wells Fargo Bank, N.A., 90 So.3d 168 (Ala. 2012). In Jackson, after the mortgagors had defaulted on their obligation to make payments on their mortgage loan, a representative of the mortgagee sent the mortgagors a letter notifying them that the mortgage debt had been accelerated. The mortgage agreement, however, provided that, before the mortgage debt could be accelerated, the mortgagee was required to provide the mortgagors with notice that they were in default, that the default could result in acceleration of the debt, and that the mortgagors had at least 30 days to cure the default. Accordingly, the mortgagors sued the mortgagee and its representative, alleging breach of the mortgage agreement. The trial court entered a summary judgment in favor of the defendants.
On appeal, this Court pointed to an opinion of the Supreme Court of Texas for the following proposition:
" 'Notice of intent to accelerate is necessary in order to provide the debtor an opportunity to cure his default prior to harsh consequences of acceleration and foreclosure. Proper notice that the debt has been accelerated, in the absence of a contrary agreement or waiver, cuts off the debtor's right to cure his default and gives notice that the entire debt is due and payable. See Faulk v. Futch, 147 Tex. 253, 214 S.W.2d 614 (1948). Notice that the debt has been accelerated, however, is ineffective unless preceded by proper notice of intent to accelerate. Allen Sales & Servicenter, Inc. v. Ryan, 525 S.W.2d 863 (Tex. 1975).' "
90 So.3d at 172 (quoting Ogden v. Gibraltar Sav. Ass'n, 640 S.W.2d 232, 233-34 (Tex. 1982) (emphasis omitted)). The Court indicated that notice of the mortgagee's intent to accelerate the debt and of the mortgagors' opportunity to cure the default was a condition precedent to the mortgagee's ability to accelerate the debt:
"[The mortgage] required the bank to give the [mortgagors] a notice-before acceleration-that it was considering an acceleration, upon the failure of certain conditions, in 'not less than 30 days' following the date of the notice. In other words, the debt could not be accelerated until at least 30 days had passed and the [mortgagors] were still in default. Under the language of this mortgage, without proper notice of intent to accelerate, acceleration fails and, consequently, so does the foreclosure sale."
Jackson, 90 So.3d at 173. Thus, because the mortgagors in Jackson were given no notice that the mortgagee intended to accelerate the debt and that they had an opportunity to cure their default, the debt could not be accelerated, and the foreclosure was invalid. The majority in the present case acknowledges that the Turners were given notice of Wells Fargo Bank's intent to accelerate the debt and of their opportunity to cure their default. In my view, that circumstance distinguishes this case from Jackson.
It is my further view that the Court of Civil Appeals correctly rejected the Turners' argument that Wells Fargo's failure to provide the Turners with the verbatim language, set out in the mortgage, regarding their right to bring an action in court rendered the foreclosure invalid. I believe that the Court of Civil Appeals properly relied on law regarding substantial compliance with contractual provisions. See Townsend v. Federal Nat'l Mortg. Ass'n, 923 F.Supp.2d 828, 835-36 (W.D. Va. 2013) (considering an identical provision in a deed of trust and ruling that language in a notice informing mortgagors that they had " 'the right to argue that [they] did keep [their] promises and agreements under the *215 [mortgage documents], and to present any other defenses that [they] may have,' " but omitting language regarding the right to " 'bring a court action,' " did not render a nonjudicial foreclosure invalid, stating that "specific language used to convey to borrowers what rights they have is not material to the essential purposes of a deed of trust").
In my opinion, the correspondence to the Turners put them on notice of their responsibility to cure their default and that, if they did not, the debt would be accelerated and the mortgage foreclosed upon. I would affirm the judgment of the Court of Civil Appeals.

Another instructive case from a nonjudicial-foreclosure jurisdiction is Pinti v. Emigrant Mortgage Co., 472 Mass. 226, 33 N.E.3d 1213 (2015). In Pinti, the Supreme Judicial Court of Massachusetts held that a notice provision in a mortgage (nearly identical to the one at issue in this case) required strict compliance as a necessary component of the power of sale in the mortgage. The court explained that the improper notice, which informed the defaulting mortgagors only of their right " 'to assert in any lawsuit for foreclosure and sale the nonexistence of a default or any other defense [they] may have to acceleration and foreclosure and sale,' " did not strictly comply with the terms of the mortgage because the notice did not inform the mortgagors of their right and need to initiate legal action to challenge the validity of the foreclosure. 472 Mass. at 237, 33 N.E.3d at 1222-23. This lack of notice is significant in a nonjudicial-foreclosure state, such as Alabama, because, as explained by the Pinti court, defaulting mortgagors
"could be misled into thinking that they had no need to initiate a preforeclosure action against the mortgagee but could wait to advance a challenge or defense to foreclosure as a response to a lawsuit initiated by the mortgagee-even though, as a practical matter, such a lawsuit would never be brought."
472 Mass. at 237, 33 N.E.3d at 1222. The court held that the subsequent foreclosure sale was void because the notice failed to strictly comply with the terms of the mortgage. 472 Mass. at 240-43, 33 N.E.3d at 1224-26.
Under a nearly identical mortgage, the Supreme Judicial Court of Massachusetts determined that a notice informing the defaulting mortgagors simply of their right to assert the nonexistence of a default in any lawsuit concerning the foreclosure was not sufficient to satisfy the terms of the mortgage but that the notice required that the defaulting mortgagors be informed of their right and need to initiate legal action to challenge the validity of the foreclosure. In the present case, the Turners were not even informed of their right to bring a court action to challenge the validity of the foreclosure.

The Court of Civil Appeals explained the importance of a party receiving notice of his right to challenge a foreclosure by court action in Campbell v. Bank of America, N.A., 141 So.3d 492, 494 (Ala. Civ. App. 2012), as follows:
"An ejectment action following a nonjudicial foreclosure, however, is not a 'foreclosure action,' and a defense in such an action asserting errors in the foreclosure process is a collateral attack on a foreclosure. See Dewberry v. Bank of Standing Rock, 227 Ala. 484, 493, 150 So. 463, 470 (1933) (characterizing the action in Jones v. Hagler, 95 Ala. 529, 10 So. 345 (1891), in which the plaintiff sought possession of certain property he had purchased from a trustee, who had sold the property pursuant to a power of sale in a deed of trust, and in which the defendant had asserted irregularities in the sale, as 'a statutory action in the nature of ejectment-an indirect or collateral attack upon the foreclosure of real and personal property sold by a trustee, under the power [of sale in a deed of trust]' (some emphasis in original; some emphasis added)). Accord Pinkert v. Lamb, 215 Ark. 879, 883, 224 S.W.2d 15, 17 (1949) (stating that an ejectment action is a 'collateral attack by appellees on the ... foreclosure decree and sale ..., and the burden [is] on them to prove such defects therein as would render the sale and decree void'); Dime Sav. Bank, FSB v. Greene, 2002 Pa. Super. 392, 813 A.2d 893, 895 (2002) (stating that '[a]n ejectment action is a proceeding collateral to that under which the land was sold' and that, 'where it is claimed that [an] underlying default judgment [in a judicial-foreclosure action] is merely voidable, that claim will not be entertained because such a judgment can not be reached collaterally').
"In a direct attack on a foreclosure-that is, an action seeking declaratory and injunctive relief to halt the foreclosure sale before it occurs, see, e.g., Ferguson v. Commercial Bank, 578 So.2d 1234 (Ala. 1991) ; Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985) ; and Woods v. SunTrust Bank, 81 So.3d 357 (Ala. Civ. App. 2011), or an action to set aside the sale after it has occurred, see, e.g., Beal Bank, SSB v. Schilleci, 896 So.2d 395 (Ala. 2004) ; Kelly v. Carmichael, 217 Ala. 534, 536, 117 So. 67, 69 (1928) ; and Browning v. Palmer, 4 So.3d 524 (Ala. Civ. App. 2008) -any circumstance in the foreclosure process that would render the foreclosure sale void or voidable may be asserted. In a proceeding involving a collateral attack on a foreclosure, however, only those circumstances that would render the foreclosure sale void may be raised as an affirmative defense."

We note that Wells Fargo cites several cases setting forth general contract law. Like Mac Pon, however, none of those cases concerns the issue presented in this case. Jackson is controlling.